1838.

Lawyer
v.
Cipperly.

### Lawyer and others *vs.* Cipperly and others.

In a bill filed against the trustees of an incorporated religious society to restrain them from ejecting the clergyman from the parsonage and depriving him of the right to preach in the church, it seems the corporation itself should be made a party to the suit.

The act of 1784 for the incorporation of religious societies recognized three distinct classes or bodies as existing in the incorporation of a christian church; viz : the church or spirtual body consisting of its office bearers and other communicants ; the congregation or electors, embracing all the stated hearers or attendants on divine worship ; and the trustees who were to have the control of the temporalities of the society for the benefit of the stated hearers and the communicants.

The church, as to its doctrines, goverment and worship is to be governed by its own peculiar rules which neither the congregatron or trustees can interfere with. But whether the church can, with the assent of the congregation and the trustees, change its government, discipline, mode of worship or standards of faith ; *quære ?*

The minister of an incorporated religious society cannot be called and settled by the church or communicants only ; but the assent of the trustees must be obtained, to authorize him to preach in a building belonging to the corporation or to occupy the glebe and parsonage. And if he is to receive a support or compensation for his services from pew rents, or from the subscriptions or ordinary contributions of the stated hearers of the congregation, the payment of such stipend must be authorized by the electors of the congregation at a regular meeting called for that purpose.

If the trustees of a religious corporation should without reason refuse to employ a minister, against the wishes of the great body both of the church and the congregation, it seems it would be such a breach of trust as to authorize the court of chancery to interfere to remove the trustees and to allow the congregation to elect others in their places. But the trustees would not be guilty of a breach of trust by withholding their assent to the call of a minister whose employment would probably destroy the peace and harmony of the church, or of the congregation.

THIS was an application by John D. Lawyer, a clergyman, December 4. and a part of the elders and deacons of Zion church, an incorporated Evangelical Lutheran society, for an injunction to restrain the defendants, who were the trustees of the corporation, from interfering with or impeding the complainants and their adherents in the occupation of the church belonging to such corporation, for public worship and the administration of religious ordinances; and from expelling the com-

plainant Lawyer from the possession of the parsonage and the glebe lands belonging to such corporation, or from proceeding at law to recover the same. The grounds upon which the application rested, were as stated in the bill, that Lawyer had been duly nominated by the church council and elected by a majority of the male members of the church and congregation; but that the defendants, the trustees of the corporation, refus.d to sanction such election or to suffer him to preach and administer the ordinances in the church, and were about to disturb him in the enjoyment of the parsonage and glebe. On the part of the defendants the regularity of the election was denied. And they also insisted that Lawyer and his adherents had abandoned the faith and doctrines of the Evangelical Lutheran church, by refusing to adhere to the Augsburgh confession of faith, in many particulars stated in the answer. It also appeared that Lawyer and his adherents had withdrawn themselves and were endeavoring to withdraw that church from the Hartwick synod, a superior church judicatory to which Zion church had attached itself many years before.

*D. Buel & S. Stevens,* for the complainants.

*H. Z. Hayner & H. P. Hunt,* for the defendants.

THE CHANCELLOR.    I am inclined to think that the objection is well taken that the corporation is not made a party to this proceeding to deprive its trustees of the control of the temporalties of the church.    The objection to such a proceeding is that a decision against these individual trustees will not be binding upon their successors, who will represent the corporation only.    Neither will a decision in their favor settle the right claimed by the complainants as against the corporation : for the new trustees could not set up a decree against the complainants in favor of the present defendants, in bar of a new suit to try the same question over again.    It is not necessary for me, however, in this case, to put my decision upon that technical ground.    Neither shall I attempt to decide the question as to which party, if either, has departed from the original standard of faith which ex-

1833.

Lawyer
v.
Cipperly.

isted in this society at its original formation. If that standard was the first or original edition of the Lutheran confession of faith as drawn up by Philip Melancthon, the friend and fellow laborer of the great German reformer, to be presented to the diet of Augsburgh in 1530, then it is probable that the complainants and their adherents have departed from that standard, in some particulars at least. But if the standard of Zion church at the time of its incorporation, or rather at the time of its original formation, was the Augsburgh confession as afterwards modified by Melancthon himself, and as explained by Francke, the celebrated professor in the university of Halle, nearly two centuries afterwards, the complainants and those who are acting with them are perhaps as near to that standard in doctrine as their opponents. It probably is not questioned by either party that the principal doctrines of the Augsburgh confession are and ever have been considered as the standard of faith in all the Evangelical Lutheran churches in the United States. But whether all the churches of that denomination of christians, either here or elsewhere, have literally adhered to the doctrine of consubstantiation or the mystical impanation or union of the real body and blood of Christ with the unchanged elements of bread and wine in the eucharist, or to the doctrine of a limited auricular confession and of private absolution, or of the necessity of baptism to salvation, certainly admits of some doubt. It is well known that a great diversity of opinion existed between the early Bohemian, German and Swiss reformers in relation to the presence of the Saviour in the sacrament of the Lord's supper. The Hussites may have believed in the doctrine of transubstantiation. But if they did, they still differed with the Romanists; who held that the real body and blood was contained in each element, and therefore refused the cup to the laity as unnecessary. Luther and Melancthon both originally held to the doctrine of impanation, or consubstantiation. Zuinglius understood the words "this is my body" in a figurative sense only; while Calvin, who repudiated the doctrine of the real presence in the consecrated emblems, insisted upon the special spiritual presence of our Saviour during the administration of the sacrament. And

1838.

Lawyer
v.
Cipperly.

against all these doctrines the *anathema maranathas* of the Papal church were directed, by the cannons of the council of Trent.   It is believed, however, that Melancthon himself, some years before his death, adopted the Calvinistic doctrine on that subject ; as did many other Lutheran divines who did not adopt the principles of the German Reformed Church generally.   And it is not improbable that this and some of the other questions which have produced the recent schism, have continued as disputed or unsettled points of doctrine in many of the Lutheran churches down to the present day.   I cannot perceive, however, why this difference of opinion should necessarily lead to a division in this branch of the christian church.   One of the doctrines inculcated by Luther and Melancthon, and by all the other reformers who joined in the original Augsburgh confession, and which was also the doctrine afterwards taught by the pastor of Glaucha in his biblical lectures at the university of Halle, allowed for a difference of opinion in minor particulars in reference to all human creeds.   And they adopted the sacred scriptures alone as the only infallible standard of faith and practice.   And such now is, or at least ought to be, the doctrine of all Evangelical Lutheran churches which profess to be based upon the reformation principles contained in the confession of faith promulgated by the German reformers, at the diet of Augsburgh, on the memorable 25th June, 1530.

In the case of *The Baptist Church of Hartford* v. *Witherell,* (3 *Paige's Rep.* 296,) I had occasion to explain my views of the difference between the officers and communicants of a church as a spiritual body, and the trustees and congregation of the church or society as the owners of the temporalities thereof, under the general provisions of the act relative to the incorporation of religious societies.   This society was incorporated under the act of 1784, (1 *Greenl. Laws,* 71,) which, in respect to Presbyterian and other churches not particularly specified, is not materially variant from the subsequent statutes as re-enacted in the several revisions of the laws.   The tenth section of the act of 1784, provides that the trustees, who by a previous section have

the control and management of all the property and temporalities of the church, shall not thereby be adjudged to have the power to fix the salary of the minister; but the salary shall be fixed by the electors of the congregation, at a meeting to be called for that purpose. And the salary or stipend, when so fixed, is to be ratified and confirmed by the trustees by an instrument under the corporate seal; after which the trustees are authorized to pay the same out of the revenues of the church, congregation, or society. The eleventh section, which I believe is not found in the subsequent revisions of the act, declared that nothing in the act contained should be construed or adjudged to abridge or affect the rights of conscience or private judgment, or to change the religious constitution or government of the church, congregation, or society, so far as respected or in any wise concerned the doctrine, discipline or worship thereof. The statute therefore recognized three distinct classes or bodies as existing in the religious corporation, and defined their relative powers and duties: the church, or spiritual body, consisting of the office bearers and communicants; the congregation or electors, embracing all the stated hearers or attendants on divine worship who are competent to vote for trustees; and the trustees of the corporation, who have the control of all its temporalities, to be improved, used, and managed by them for the benefit of all the stated hearers and the communicants, as far as is practicable. The church, or spiritual body, as to its doctrine, government and worship, is to be governed and regulated by its own peculiar rules, which neither the trustees nor the congregation have any right to interfere with or alter without the consent of the church itself. Whether the church, as such, has a right to change its government, discipline or mode of worship, or its standards of faith, with the consent of the trustees and congregation, is a question which does not arise here; as it is denied that the trustees or the congregation have ever assented to a change in this respect, if any has in fact been made by the complainants and their adherents. But to authorize the calling and settling of a minister, if he is to preach and administer the ordinances in a building be-

1838.

Lawyer
v.
Cipperly.

longing to the congregation, or is to have the use of the parsonage and glebe or any other part of the corporate property, it is not sufficient that he should be called or elected by the church only, as the spiritual body, according to its general usages; but his employment must also be sanctioned by the trustees as the representatives of the temporal rights of the whole congregation. And if he is to receive any support or compensation for his services, either from pew rents or from subscriptions or other ordinary contributions by all or any of the stated hearers of the congregation, which subscriptions or contributions for the support of a settled minister are a part of the revenues of the congregation or society within the intent and meaning of the statute, the payment of such stipend must also be authorized by the electors at a regular meeting called for that purpose; or the trustees will violate their duty by suffering him to be thus employed and paid.

It will be seen, from this view of the subject, that the provisions of the statute are well adapted to preserve harmony between the communicants of the church and the other members of the congregation; which latter class it is of more importance to conciliate, and to bring within the hearing and under the influence of the gospel, than it is to impart spiritual benefit to those who are already members of the church as office bearers or communicants.

If the trustees without any reason whatever should obstinately refuse to employ a minister who was every way acceptable to the great mass not only of the church but also of the congregation, and who had not in their opinion departed materially from the standards of faith adopted in such church, I am not prepared to say this court would not correct such a flagrant breach of trust by removing them from their office as trustees; so as to allow the congregation to elect others in their places. It must, however, be a case of a palpable breach of trust which will authorize this court to interfere; and it should not be done in any case where the church and congregation were very nearly equally divided as to the propriety of employing any particular person as their minister. And it is the right if not the duty of the trustees

to withhold their assent, where there is reason to believe that the employment of the individual selected by the majority of the church, be he orthodox or not, will destroy the peace and harmony of the congregation or of the church. In such cases also ministers of religion, who profess to be the disciples of Him who taught the religion of peace and good will in all the relations of life, should not suffer themselves to be the means of fanning the flame of discord or sowing the seeds of strife in any church or congregation with which they are connected.

For these reasons, and without intending to decide the question as to which party is right in the religious controversy which is unfortunately distracting the *Evangelical Lutheran* church in this part of the United States, I am satisfied that the defendants have not abused their trust. The complainants therefore are not entitled to any relief which it is in the power of this court to give.

The application for an injunction must be denied with costs to be taxed. And the temporary injunction agreed on by the counsel of the parties is dissolved.