Campbell, J.
A temporary injunction order was granted against the defendant, restraining him from further officiating as the pastor of the German Reformed Church, in Forsyth street, and at a subsequent day he offered to show cause why the injunction should not be continued. It seems that no suit has been instituted, but the parties being anxious to have a *667 decision on the merits of the controversy, I took the affidavits and other papers, with a view of examining the question, and determining the respective rights.
The moving parties are three out of four of the deacons, three out of four of the elders, and six out of nine of the trustees, and they insist that the defendant was not regularly, and according to the rules and by-laws of this church, elected its pastor, and they ask that he may be restrained from occupying the pulpit, and otherwise officiating as the pastor. The defendant, with the remaining officers of the church, and, as they allege, a majority of the congregation, insist.that such election of, the defendant, as pastor, was legal and valid.
A meeting of this congregation, for the purpose, among other things, of electing a pastor, was held on the 31st of May last, at which election there were several candidates. The votes cast for the defendant were more numerous than those cast for any other, but did not constitute a majority of all the votes. It is contended by the defendant, that he, having a plurality of votes, was duly elected.
The rules and by-laws of the church are in German, and each party has furnished me with a translation, and in that of the plaintiffs, it appears that it is necessary that there should be a majority of the votes cast for some one person before such person can be elected pastor, while by the defendant’s translation, it seems a plurality of votes is sufficient, and the defendant sets forth in his affidavit, that the practice in the church has heretofore been in accordance with his construction. On examination, 1 find that the German word used in these articles, means either majority or plurality. This is an independent church, and as I understood, has no connection with any ecclesiastical body, and there is no means of ascertaining the true meaning of these rules, by reference to those of any other church. I can hardly think, however, that it could have been the intention of the founders of this church, to call a pastor who received less than a majority of the votes of the congregation. ■ It may well be, where there were several candidates, that preferences may have been waived, and he who received the largest number of votes, has been declared elected by, and with the consent of the congregation assembled, and without a further formal bal *668 lot. But where the election, as in this case, is contested and resisted, I am' constrained to say, from my examination of the meaning of the word thus differently translated, that a majority of votes was required.
But in this case, not only was the election determined by a minority of votes, but a small minority of the trustees and other officers of the church in communicating to the defendant his alleged election, also undertook to fix his salary, in reference to which, it is not pretended that any vote of the congregation was taken. (See 3 R. S., p. 248, § 8.)
Again, by statute, (3 R. S. 246, § 4,) all the church property, both real and personal, is vested in the trustees, and they have the entire control over it. The use of the property, and the émployment of the minister, ought to be sanctioned by the trustees, as the representatives of the rights of the whole congregation. If the pastor is to receive a salary, the payment should be authorized by the whole members of the congregation, at a regular meeting, called for that purpose (see Lawyer v. Cipperly, 7 Paige 281) ; if not, “ the trustees will violate their duty by suffering him to be thus employed.” I dp not understand, from any of the papers before me, nor was it pretended on the argument, that the congregation had, at such meeting, fixed the salary, or that any sanction had been given by the trustees to the salary named by the officers who conducted the meeting of the 31st of May.
Even therefore, if, as contended by the defendant, he was elected pastor, on the 31st of May, by a majority instead of a" plurality of votes, no compensation having been fixed by the congregation, and the sanction of the trustees not having been given, I do not think he has any legal right to the occupation of the pulpit of this church. It may be doubtful whether the trustees need the aid of the court in this matter.
I have already remarked that, this application is made on behalf of a large majority of the officers, including elders, deacons, and trustees ; and I cannot express my views of it better than by quoting from the opinion of the chancellor, in the case of Lawyer v. Cipperly, before referred to, and which was a case, in many of its features, analogous to this. “ It is the right, if not the duty, of the trustees, to withhold their assent, where *669 there is reason to believe, that the employment of the individual selected by the majority of the church, be he orthodox or not, will destroy the peace and harmony of the congregation or of the church. In such cases also, ministers of religion who profess to be disciples of Him who brought the religion of peace and good will in all the relations of life, should not suffer themselves to be the means of fanning the flame of discord, or sowing the seeds of strife in any church or congregation with which they are connected.,,