Upon the incorporation of the religious society in 1826, under the name of the "Associate Congregation of Cambridge, of the county of Washington and state of New-York, adhering to the principles of the Associate Presbytery of Pennsylvania formerly, now the Associate Synod of North America," the title to the property real and personal which had been theretofore acquired by the society by gift, grant, conveyance to trustees for the use of the members, or otherwise, vested in the corporation, and the trustees of the society thereupon and thereafter duly elected succeeded to the possession and custody of all the temporalities of the congregation, and were invested with all the powers and subjected to all the duties devolved upon trustees by the act for the incorporation of religious societies, passed April 5, 1813. (1 R.S. 4th ed. 1179.) It is not claimed that any part of the property which is the subject of this controversy was for any reason exempted from this consequence of the act of incorporation. The members of the congregation, having availed themselves of the benefits of the general law for the voluntary incorporation of religious societies, necessarily subjected themselves to all its provisions; and the rights and privileges of individual members, the qualifications of electors, the powers and duties of the trustees, and the rules for the enjoyment, employment and disposal of the temporalities of the body corporate must be sought for in the act under which the corporation was created. The church proper, as a collective body of Christians who have made a public profession of the Christian religion and are united in fellowship and communion *Page 268 
under the same pastor and form of church government, is entirely distinct from the ecclesiastical society formed under the act; and while the professing members of the church have, as such, rights and privileges accorded to them, and duties imposed upon them which are not common to the non-professing members of the congregation, as corporators the rights and privileges of all are equal.
It follows, that while for all the purposes of this case it may be assumed that so long as the members of the Associate Congregation of Cambridge remained unincorporated they could provide for an administration of their funds in such manner, and an appropriation of their property to such purposes not inconsistent with the laws of the land as they pleased, and might restrict the use of their property to those who professed a common faith with them and submitted to the same church discipline, and might lawfully exclude all others from a voice in the affairs of the body, upon becoming incorporated under the general provisions of law these peculiar and exclusive rights and privileges were surrendered, and thereafter the property of the society became the property of the corporation, to be managed and controlled for the benefit of all who by the act are recognized as members and entitled to the rights of membership. It is not material, therefore, to inquire into the effect of the clause in the deed from Jonathan French, which it is claimed created a trust in the property conveyed for the exclusive benefit of the members of the church in full communion. (1) The benefit of that trust, if any such at any time existed, was voluntarily relinquished by the beneficiaries at the time of the incorporation, and in that relinquishment the complainants and all others, so far as appears, acquiesce. (2) It is not claimed that the property is held for any "pious use" other than for the benefit of the society, and there is no way in which it can be administered under the act for the benefit of any one class, to the exclusion of other members of the congregation entitled to vote for trustees and eligible to that office.
The bill charges that the property of the congregation was *Page 269 
and still is held by the trustees "in trust for the sole and only and exclusive purpose of being devoted and appropriated solely and exclusively to the support and maintenance of the preaching and teaching the gospel, and the administration of divine ordinances in said associate congregation, according to the aforesaid principles of faith and practice, discipline and government of said Associate Church of North America. According to which principles, no minister who is under sentence of excommunication can be permitted to occupy the pulpit, or administer divine ordinances, in said associate congregation." The defendants, by their answer, admit this to be true, and the final decree of the supreme court is based upon the truth of this allegation, and proceeds upon the assumption that the property was and is held upon the trusts, and for the purposes named. The defendants have not appealed from any part of the decree, and so far as it adjudicates upon questions involved in this litigation adversely to them, it is conclusive upon them. They have acquiesced in the decree, and it is not open for review upon this appeal at their instance.
But for the admission in the answer, and the implied adjudication of the supreme court, I should deem it very questionable whether a trust for the particular and limited purpose claimed, could be predicated upon the description of the beneficiaries or the particular name by which they were mentioned in the grant of the property. There is nothing in the grants requiring the property to be devoted to the preaching or teaching of the gospel in conformity with the tenets and doctrines of any particular denomination, or for the benefit of a church holding a particular ecclesiastical connection with any other body, unless it can be implied from the name which the association assumed, and by which they were at that time known. But for the purposes of this appeal, this is not an open question. One other important question is definitively settled by the judgment of the supreme court, from which no appeal has been taken, to wit, that the defendant Bullions had been, and at the time of filing the bill of complaint, was deposed from the ministry, and that *Page 270 
the trustees of the corporation could not rightfully or lawfully appropriate or apply the property without the consent of all the members of the corporation to his support, nor allow him to preach in the church edifice belonging to the corporation; and that the trustees should be enjoined from the application of said property to the support of Dr. Bullions, and from permitting him to preach in the church edifice until he should be restored to the office of the ministry. Although we might be of the opinion that the proceedings against Dr. Bullions, and those of his church who adhered to him, were not conducted with all that charity, brotherly love and forbearance, which should have been expected, the action of the church judicatories, or the effect of such action upon the rights of the parties, are not before us upon this appeal.
The appellants insist that the supreme court erred in the reversal of that part of the decree of the vice chancellor removing the trustees from office, and providing for the election of others in their stead. The power of a court of equity in this state to prevent a diversion of the temporalities of a church from the purposes to which they were devoted, and compel the due execution of a trust by the officers of a religious corporation, is one thing, while the power to remove the officers for an alleged diversion of the trust property, and consequent abuse of the trust, is quite a different thing. The former power may be conceded upon principle and authority to be inherent in every court having, in virtue of equity powers, jurisdiction over trusts, without advancing at all in the argument to establish the latter power. A court of chancery in the exercise of its jurisdiction over trusts, proceeds in a limited sense in rem,
and by its decree acts upon the trust fund or property, taking action as to persons only so far as may be necessary to accomplish the end; and when the person proceeded against is a mere trustee, having no relation, official or otherwise, to the property, the cestuis que trust or third persons, other than as the depositary of the legal title for the purposes of the trust, it is very proper in cases of a gross abuse of the trust, endangering the safety of the fund *Page 271 
and the interest of the beneficiaries, to transfer the title from the faithless trustee, and vest it in one more worthy. But when the trust is incident to an office, or grows out of the relation of the parties, it is more than questionable whether the powers of the court extend to the removal from office, or the destruction of that relation to which the trust is an incident. The power is not necessary to the performance of the proper functions of the court in compelling the execution of the trust. Municipal officers may be ex officio trustees for the administration of funds for the benefit of portions or of the entire community; and yet it would hardly be claimed that for an abuse of such trust they could be removed from office by the decree of a court of equity; and whether the trust duties constitute the principal, or but a small part of the duties of the office, is not material. The office and officer are distinct from the trust and trustee; the latter are subject to the direction of the court of chancery; the former not.
The cases in the English courts cannot be relied upon as authorities for the jurisdiction in this state, or safely followed as precedents, for the reason that there is no analogy between our system and the laws under which religious societies are incorporated and their temporal affairs managed, and the charities and trusts for religious purposes in England, in respect to which the decisions have been pronounced. Knickern
v. The Lutheran Churches of St. John's and St. Peter's, andothers, (1 Sandf. Ch. R. 439,) is the only direct authority in support of the position, that trustees of a religious corporation may be removed from office for acts done in respect to the property of the corporation; and this, I think, unsupported either by principle or authority. The learned assistant vice chancellor relies upon the jurisdiction of the court of chancery over charities, independent of any statute, and the decisions of the English chancery in respect to private charities. He also cites Lawyer v. Cipperly, (7 Paige, 281,) in respect to which it is sufficient to say, that the chancellor did not decide that the court had authority to arrest a breach of trust like the one in question, by removing the trustees from office. *Page 272 
The statute has prescribed the mode and manner of electing officers of religious corporations, and the qualifications of electors; and officers duly elected, by properly qualified electors, cannot be removed from office, without, to some extent, disfranchising both the electors and the person chosen to office, and depriving them of the rights secured to them by law.
Provision has been made by statute for the suspension or removal of trustees and officers of corporations other than incorporated library societies, religious corporations and Lancasterian and select schools, from office, for abuse of trust, or grass misconduct. (2 R.S. 462 § 33, § 57.) This legislation on the subject shows, 1. That the legislature did not suppose that, independently of the statute, the court of chancery had power to remove a director or trustee of any corporation for any cause; and 2. That they did not deem it expedient to vest such power in the court, in respect to the corporations excepted from the operations of the act, religious corporations being within the exception. The provision was new, and introduced to remedy evils then existing. The vice chancellor exceeded his power in the removal of the trustees from office, and the reversal of that portion of the decree by the supreme court was right.
The claim of the complainants for an account of the rents and profits of the property from the time of the deposition of Dr. Bullions from the ministry, was properly disposed of by the supreme court. 1. The right of the defendants, who are trustees, to the custody of the property being established, it is not seen upon what principle the complainants, a small minority of the members of the association, can compel an accounting to them for the income. To whom should the amount which upon an accounting might be found due be paid? Not certainly to the minority of the congregation, to reimburse them for expenses incurred in procuring the gospel to be preached by a minister of their own selection, and at a place other than the church edifice owned by the corporation. The calling of a minister is doubtless, by the church as a body, distinct from the incorporated society, but the regulation of the amount and the payment *Page 273 
of the salary is within the control of the society, and the amount is to be ascertained by a majority of those entitled to elect trustees. I do not understand that it is claimed that the trustees have refused to appropriate the income of the property to the payment of a pastor thus called, and whose salary has been ascertained and fixed according to law. 2. The trustees have acted in good faith, and as they supposed and as is tolerably apparent from the proof, in accordance with the wishes of a large majority of those entitled to a voice in the premises. The defendants have derived no personal pecuniary benefit from the use of the property, and the complainants have not been deprived of profits or possession to which they had any legal right, to the exclusion of the defendants and a majority of the members of the congregation.
There is no reason to suppose that the trustees will refuse properly to apply the property of the society to the support of gospel preaching in the church edifice, whenever a minister shall be called and settled, and the decree pronounced by the supreme court will prevent a diversion to any unauthorized purpose. It was not necessary or proper, therefore, to go farther than to restrain the defendants from the application of the fund to the support of Dr. Bullions and his ministry. The discretion of the supreme court in respect to costs, was properly exercised.
The decree of the supreme court should be affirmed, with costs of this court.
DENIO, J., concurred in the opinion of ALLEN, J., and dissented from the 8th proposition stated by Selden, J. GARDINER, Ch. J., PARKER and EDWARDS, Js., concurred in the conclusions of Selden, J. RUGGLES, J., was absent.
Decree affirmed. *Page 274