EVENSON and others, Trustees, etc., Respondents, vs. ELLINGSON and another, Trustees, etc., and others, Appellants.

*December 18, 1886 — January 11, 1887.*

*Corporations: Religious societies.*

1. Two or more separate and distinct churches cannot lawfully be organized into one corporation.
2. A body which cannot become a corporation *de jure*, cannot become a corporation *de facto*.

APPEAL from the Circuit Court for *Dane* County.

The action is brought to have the plaintiffs, together with the defendants *Ole Ellingson* and *Soren Anderson*, declared to be the sole and lawful board of trustees of the Norwegian Lutheran Congregation in the Counties of Dane and Jefferson, State of Wisconsin; to have Ole Vatnebrun and Thorre Odegaard declared to be the lawful church-wardens of said corporation for its Eastern and Western churches respectively; to have the defendants *Subey, Borgerud, Jordalen, Olsen,* and *Tvedten* enjoined and restrained from acting or attempting to act as trustees of said corporation; to have the defendants *Ole Ellingson* and *Soren Anderson* enjoined and restrained from acting or attempting to act as such trustees in connection with the other defendants last named, or in any way except in connection with the plaintiffs; to have all of the defendants enjoined and restrained from interfering or intermeddling with the property of the corporation; to have the defendant *Bosben* enjoined and restrained from acting or attempting to act as warden of said corporation for its Western church or otherwise; and to have the defendant *Christen Anderson* enjoined and restrained from acting or attempting to act as warden for the Eastern church, and from holding or keeping possession of said church or its keys or the premises connected therewith,

and to have him compelled to deliver up to the said Ole Vatnebrun or the plaintiffs the keys, possession, and control of said Eastern church and premises connected therewith.

The complaint alleges that said corporation, The Norwegian Lutheran Congregation in the Counties of Dane and Jefferson, Wisconsin, was organized under ch. 47, R. S. 1849, on the 19th of May, 1854, and has ever since exercised its powers and privileges as a religious corporation or society; and that said corporation at the time of its organization consisted, and now consists, of the members attending services at two separate church buildings known as the Eastern church and the Western church.

The answer alleges, among other things, that the people attending the so-called Eastern and Western churches have always considered themselves to belong to separate congregations or societies, though served by the same minister, and that they have always had their separate and distinct boards of trustees; that the Eastern congregation, being composed of settlers residing in Dane and Jefferson counties, was called the Norwegian Lutheran Congregation in the Counties of Dane and Jefferson, Wisconsin, and the Western congregation was wholly within Dane county and was known as the West Koshkonong Congregation; that in the year 1853 or 1854 an attempt was made *to organize the Eastern congregation* under the name of the Norwegian Lutheran Congregation in the Counties of Dane and Jefferson, and for that purpose proceedings were had and taken and set forth in a paper which was recorded in the office of the clerk of the board of supervisors of Dane county on the 13th of April, 1855; that ever since such proceedings were had and taken the said congregation which attended services at the said Eastern church have continued to act as a religious society wholly distinct and independent of the congregation which attended religious services at the Western church; and that in the election of trustees and in

caring for the property and in conducting the affairs of their respective churches the said two congregations have always acted separately and independent of each other, except that they united with a third congregation, having a church at Liberty Prairie, in building a parsonage for the pastor who officiated for the said three congregations.

The answer further denies that the Norwegian Lutheran Congregation in the Counties of Dane and Jefferson was organized as a religious corporation or society under ch. 47, R. S. 1849, except as above stated; and denies that the members attending the Eastern church and those attending the Western constitute one corporation. It alleges that since the attempted organization of a corporation as aforesaid by the Eastern congregation, the said congregation has pretended to act and exercise the privileges of a religious corporation, but if any corporate rights or powers have been acquired thereby they have been acquired exclusively by the said Eastern congregation, and the Western congregation has no interest therein and no right to interfere in its affairs. The answer further alleges that the defendants *Ole Ellingson, Soren Anderson* and *Ole C. Olsen* are the present trustees of the said corporation, The Norwegian Lutheran Congregation in the Counties of Dane and Jefferson, Wisconsin, and denies that five of the seven plaintiffs are members of said corporation or of the church known by that name.

A further statement of the voluminous pleadings is not deemed necessary. A temporary injunction was granted in accordance with the prayer of the complaint. The defendants moved to dissolve such injunction. A sufficient statement of the facts appearing from the pleadings and the affidavits used on the hearing of such motion will be found in the opinion. The circuit court denied the motion, and from the order entered accordingly the defendants appealed.

For the appellants there were briefs signed by *Ollis &*
*Helms*, *Frank M. Porter*, and *I. C. Sloan*, and the cause
was argued orally by *Mr. Sloan*.

For the respondents there was a brief by *Pinney & San-*
*born* and *J. M. Olin*, and oral argument by *Mr. Pinney*
and *Mr. Olin*.    To the point that two or more congrega-
tions could be incorporated under ch. 47, R. S. 1849, they
cited *Cammeyer v. U. G. L. Church*, 2 Sandf. Ch. 208, 228–9;
*Trustees v. Bly*, 73 N. Y. 323, 325, 327–8.

ORTON, J.  In the year 1844 two Norwegian Lutheran
churches were organized on the principles of a Christian
church,— one of them by regular members of the Lutheran
church and a congregation, settled and living in the east
part of Dane and the western part of Jefferson counties,
on East Koshkonong prairie, in convenient neighborhood
with each other, and was called " the Norwegian Lutheran
Church of the Counties of Dane and Jefferson," and after-
wards, in common parlance, "the Eastern Church."   The
other one was organized by similar members and a congre-
gation, settled and living wholly in Dane county, on West
Koshkonong prairie, and was called "the Western Church."
These churches and their places of meeting for worship
were distant from each other about nine miles, and were
both fully organized with the proper ordinances and offi-
cers of independent, separate, and distinct churches, al-
though for proper reasons they for a time employed the
same pastor or minister, who administered to the same sep-
arately.   These churches very soon took steps to build
meeting-houses, and about 1845 or 1846 they did build
meeting-houses of convenient access to these two distinct
and distant congregations, and in the place of the one orig-
inally built by the Eastern Church there was another one
constructed, and in the same place, which has been ever
since, and still was up to the time of the injunction in this

case, the regular and exclusive house and place of worship of the said Eastern Church and congregation; and titles to church property, both real and personal, within said church and congregation, and used by them, have been taken and still are in said Eastern Church by the name of the "Norwegian Lutheran Church on Koshkonong Prairie, in the Counties of Dane and Jefferson;" and said church has uninterruptedly continued to worship and administer the ordinances of the church at the same place and in the same manner, and has adhered to the same doctrines and articles of Christian faith, until their interruption by said injunction, and has always been represented in and recognized by the regular synod of said general church as a separate and independent church in good and proper standing.

It is not material to the question upon which this case is decided whether the Western Church has thus continued to worship in a proper form and manner as a separate and independent church in their own house of worship, within their congregation, like unto the Eastern Church or not; but it is nevertheless true that the said church has always maintained its separate, distinct, and independent organization to the present time, and both churches and congregations have always elected their trustees and all other officers by the electors of their respective and separate organizations, within their own meeting-houses. In 1854 it appears from the record introduced in evidence — but disputed by the respondents — that the said Eastern Church, after many years attempting to conduct the business of its temporalities by an independent corporate or civil organization of its own, took steps to organize its congregation and membership into a corporation under the Revised Statutes of 1849, but failed in some particulars to fully comply with said statutes; but from that time to the present said church has continued to exercise the functions and powers and. enjoy the franchises of a corporation *de facto*, and has con-

tinued to elect its own trustees and manage all its secular concerns as a corporation.  For the purpose of organizing itself into a corporation as aforesaid, notice was given, to some extent according to the statute then in force, by said church, for a meeting of the congregation by the name of " the Norwegian Lutheran Congregation in the Counties of Dane and Jefferson," to be held " at the *Eastern* meeting-house " on a certain day therein named.   The certificate of what was done at said meeting, signed by the officers thereof, introduced in evidence, shows that " the Norwegian Lutheran Congregation of the Counties of Dane and Jefferson " met or held a meeting according to said notice, at the *Eastern* meeting-house in the town of Christiana in the county of Dane; that a majority of the members present chose the presiding officers thereof and adopted a resolution " that this religious society be organized as a body corporate, by the election of nine trustees, hereafter to be called and known in their corporate capacity as trustees of the Norwegian Lutheran Congregation in the Counties of Dane and Jefferson, State of Wisconsin."   The said meeting accordingly elected a full board of nine trustees.   There may be some evidence by affidavits (which, however, was contradicted by counter-affidavits) that said meeting was composed of the joint congregations of the two churches, the Eastern and Western; but the writings and records introduced in evidence most certainly show that said meeting was exclusively that of the Eastern Church and congregation as far as the true name of that original organization as a church and congregation is concerned, and the language was inappropriate to any other church and congregation than the *Eastern* Church, for no other had a congregation within both counties of Dane and Jefferson; and the *Western* Church and congregation were exclusively within the county of Dane.

When the two churches and congregations passed by-laws,

in 1853, for the government of both bodies, they provided that the trustees (separately elected by both bodies) should meet "every year December 1st, *jointly* with the pastor and deacons of the congregations [in the plural], for the purpose of considering the *joint affairs* of the congregations." Right here, evidently, was the inception of this joint body, which has given the plaintiffs the pretext for claiming that there never was a distinct and separate corporation, *de jure* or *de facto*, of either church and congregation, but that there was one corporation for both, and which included both churches and congregations.    But this language explains itself.    There was a *quasi* body or organization of both bodies into one, but only "for the purpose of considering the *joint* affairs of the congregations;" but which was to have nothing to do with the private affairs or management of either of the churches.    They were left to the management of, and have always been managed by, the two churches and congregations separately and independently of each other.    The entry on the records of that year afterwards shows a meeting of "the trustees for the *Eastern* and *Western* Koshkonong congregations for the purpose of organizing in pursuance of section 4 of the by-laws" adopted at the above joint meeting a short time before, which by-law provided for the election of a secretary and treasurer of such joint body.    Whenever, at any time, trustees were to be elected or other business to be done, it was done by the Eastern and Western Churches, separately, at their own meeting-houses and by their own electors and members, as appears by their records, down to 1860; and whenever a pastor was to be chosen for both churches, or other *joint* · business to be done, the records show that it was done by "the trustees and deacons for the Koshkonongs and Liberty Prairie congregations," etc., and by the "Eastern and Western Koshkonongs and Liberty Prairie congregations," etc., and by "the trustees of the Eastern and Western Lutheran

congregations of Koshkonong," etc. There are entries on the record of a certain number of members being received into the Eastern or Western Church, as the case might be, and so many withdrawing from one church and being admitted to the other. But it is profitless to go over the evidence further than to show that these two churches and congregations have always been separate and distinct, and that the Eastern Church has the advantage, if it be an advantage, of having attempted an organization under the law as a corporation, and has continued to manage its secular affairs under it until the injunction restrained it from so doing and by its mandate compelled it to surrender its property to the plaintiff or Western Church. We think we may safely say that the said Eastern Church and congregation has always acted as a corporation since that time at least, and has been a corporation *de facto* since 1854, and is so yet. Whether said body is a corporation by the curative provisions of ch. 91, R. S. 1878, is not material to the question we shall consider.

In respect to the property, real or personal, of these two churches, it must, at least in equity, belong to each according to the intention to vest the title thereto in the one or the other, and which has been in the possession and use of the two churches respectively and separately. Neither church has the right to the meeting-house or any other property which has so been in the possession, use, and enjoyment of the other; but until it is otherwise adjudicated all such property must continue to be held and enjoyed for the purposes for which it was procured by or for either of said churches, and said property must not be disturbed in the peaceable possession of either of said churches, which have been, respectively, in possession thereof up to the time of said injunction. Such we deem the present right of both of said churches, but more especially of the Eastern Church, which has long acted as a corporation *de facto* if not *de jure*.

But the examination and consideration of the above facts and history are mainly pertinent to the important question whether, under the Statutes of 1849, which were in force when the Eastern Church attempted to organize as a corporation, or under any subsequent or present statute, two or more separate and distinct churches and congregations can lawfully be organized into one corporation. The plaintiffs, who procured the injunction in this case, claim to represent such a corporation, organized by and over both the said Eastern and Western Churches together, with one board of trustees, having control of the property, secular affairs, and temporalities of said Eastern Church. The defendants represent the corporation of the Eastern Church exclusively, and the property thereof. If a corporation cannot lawfully be formed by and over more than one church and congregation, the claims of the plaintiffs are unfounded, and they had no right to procure the injunction in this case, and it was error in the circuit court to continue said injunction on the motion of the defendants to dissolve it, and overrule said motion, from which order this appeal is taken. This is a very important question, but not very difficult to solve, for it depends upon the language and construction of our own statutes.

We do not think that our statutes authorize such a corporation. If a religious corporation may be formed by and over *two* separate churches and congregations, it may be formed by and over fifty or one hundred, or by and over all the churches in the state, and the trustees of one corporation may govern all of their temporal affairs. The large churches and congregations might elect a majority of such trustees and the officers of the corporation, and might thereby crush out and destroy the weaker churches utterly and take away their property. Besides, the place of meeting of such a mammoth corporation to elect trustees or to do any other corporate business, would be distant from and

inconvenient to most of the churches and congregations. The danger arising from schism and disagreements which would keep the churches always embroiled and troubled, and many other evils, would attend such a corporation. Such a corporation would be contrary to the policy of our institutions, which is that the affairs of our civil and political bodies corporate shall be transacted near the people, and their meetings held in places easily accessible to the people and electors, and that such bodies shall not embrace more territory than necessary, so that the people shall not be subject to foreign tribunals and shall be able to enjoy their liberties and discharge their civil duties near their homes. These are some reasons why the legislature most probably did not intend to pass any statute authorizing such religious corporations, but of course this is not conclusive against the incorporation of many churches and congregations, however numerous and distant from each other they may be, by one certificate or charter, if such is the law.

Ch. 47, R. S. 1849, in force when the Eastern Church, at least, acted as a corporation *de facto*, in almost every section indicates as strongly as mere affirmative words can that a corporation must be confined to one individual church, congregation, or religious society. " Section 1. It shall be lawful for all persons of full age, belonging to *any* church, congregation," etc., " to assemble at *the* church or meeting-house," " elect any number of discreet persons of *their* church, congregation, or society, not less than three, nor more than nine, as trustees," etc. " Sec. 2. . . . Every person of full age, who has statedly worshiped with *such church*," etc., " shall be entitled to a vote." " Sec. 3. The minister of *such congregation*," etc., " in *such church*," etc., " on which *such church*," etc. Sec. 4. " Elders, deacons, wardens, and vestry-men of *such church*," etc. Sec. 5. " Of the county within which *the church* or *place* of worship of *such* congregation shall be *situated*." Sec. 6. " The

temporalities of *such* church," etc., "real or personal estate granted," etc., "to *such* church," etc. Sec. 7. "Belonging to *such* church," etc. Sec. 9. "Temporal affairs of such church," etc. Sec. 15. "No person belonging to *any such* church," etc. Sec. 16. "Stated hearers in *the said* church." Sec. 17. "Majority of *such* society," etc. Sec. 20. "Every church," etc., "heretofore incorporated," etc. Sec. 22. "Whenever by the constitution, rules, or usages of *any particular church*," etc. In sec. 23 the same language is repeated. Is there any question but what this language contemplates the incorporation of only a single, individual, and distinctive church, congregation, or society, and no more? There is certainly no warrant or authority in this chapter for the incorporation of more than a single church under one charter or certificate, or for more than one single church constituting one body corporate. In the Revision of 1858 the same language is preserved.

The language of the various sections of ch. 91 of the present Revision is equally clear and explicit that there can be but one church in one corporation: Sec. 1990. "Male members of *any church* or society," etc., "which shall have been organized in this state," etc.; "members of any religious congregation," etc. Sec. 1991. The certificate shall state "that the undersigned," etc., "and those who are or may become *associated* with them," etc., "have organized themselves into *a* religious society of the —— church [the name to be inserted] located in —— [name of town, village, or city]," etc., "*which society* shall be known and incorporated by the name of [here insert the name]," etc. "*The society named therein* shall be a corporation," etc. Sec. 1993. "Public notice," etc., "shall be given to the members of *the* church," etc., "for two successive Sabbaths on which *such church*," etc., "shall statedly meet for public worship," etc. "The male members of *such church*," etc., "shall be entitled to vote." Sec. 1995. "*Every* existing church,"

etc., " heretofore incorporated, and *every* such church," etc.; " the name by which *such society,* and the corporation connected with *it,*" etc.; " and that *such society and corporation* are reorganized," etc. Sec. 2000. " All lands," etc., " conveyed," etc., " to any persons as trustees, in trust for the use of *any* religious *society* organized, or which may be hereafter organized, within this state, either for *a* meeting-house, burying-ground, or for the residence of *a* preacher, shall, with the improvements, vest in the trustees of *such religious society* as fully as if originally conveyed to them," etc. This language is especially applicable to said Eastern Church, for it has had regular trustees from an early day, and some of its property was conveyed to them, while other property was conveyed directly to the church. All such lands, etc., vest in the trustees of the corporation when organized under this chapter, showing that the corporation, even as to all of its property, shall embrace only one church or religious society. Sec. 2001. " Every religious society organized or attempted to be organized under chapter 47 [R. S. 1849] by filing or having recorded a certificate," etc., " designating the *name of the church,*" etc., " and which," etc., " has acted as *a religious corporation,*" etc., " shall be deemed to have been legally incorporated," etc., " and shall have the powers," etc., " of religious corporations *under the provisions of this chapter.*"

The last legislation on the subject (ch. 88, Laws of 1874) most fully recognizes this principle: Sec. 1. " All church societies," etc., " with the *name of the church,*" etc., " *the said church holds its* meetings," etc., " shall have and hold all such personal or real estate conveyed *to such* society as shall be reasonable for the use of *a church* and parsonage," etc. This act is an amendment of ch. 47, R. S. 1849.

There is not a single clause or word of our statutes that can possibly be tortured into any reference to the formation of a corporation over more than one single church, and

corporations can exist only by the authority and sanction of the law. It is most remarkable that any one should have ever conceived the idea that more than one church or religious society could be embraced in one corporation. What is the policy of our statutes in this respect is the policy of all statutes and laws in this country, and always has been since the formation of our government. Ang. & A. Corp. § 37; 2 Kent's Comm. 221; *Lawyer v. Cipperly*, 7 Paige, 281; *Ebaugh v. German Reformed Church*, 3 E. D. Smith, 60; *Wheaton v. Gates*, 18 N. Y. 395; *Baker v. Fales*, 16 Mass. 503; *Stebbins v. Jennings*, 10 Pick. 172; *McGinnis v. Watson*, 41 Pa. St. 9; *Sutter v. First Reformed Dutch Church*, 42 Pa. St. 503; and other authorities in notes to the text. The separate and distinctive character of two parishes or churches is shown in *Peckham v. North Parish*, 16 Pick. 274, where it is held that two parishes cannot even employ a common minister by a joint contract, unless they worship together. I do not think that another case can be found in this country where it is even claimed that one corporation embraced more than one church or religious society.

It follows that the plaintiffs cannot rest any right to interfere with the property in the possession or use of the Eastern Church or of its acting trustees, upon any pretended incorporation of the Western and Eastern Churches together, or upon their authority as the trustees thereof. To be a corporation *de facto*, it must be possible to be a corporation *de jure*, and acts done in the former case must be legally authorized to be done in the latter, or they are not protected or sanctioned by the law. Such acts must have an apparent right. *Brown v. Lunt*, 37 Me. 423; *State ex rel. Knowlton v. Williams*, 5 Wis. 308. The Eastern Church and its trustees have acted as if legally incorporated, purchased property real and personal, built a meeting-house and a parsonage, employed a minister, conducted public

worship, and done all other things proper for an organized church and congregation of a Christian sect or denomination, in one locality in Dane county, for nearly fifty years, and they should be protected rather than disturbed. The plaintiffs have shown no right whatever to interfere, by injunction or otherwise, with the use and enjoyment of their meeting-house, with their regular worship, or with any property which they have used and enjoyed as a church, separate and distinct from other churches. The Western Church, its members or its pretended trustees, or the trustees of any pretended corporation claimed to embrace more than one church or more than said Western Church, have shown no right whatever to interfere in any respect whatever in the affairs, temporal or spiritual, of the said Eastern Church or of its trustees.

The evils and troubles of these two Christian churches are traceable to this assumed right of organization of one corporation to embrace both; and a corporation embracing many churches, with a board of trustees apportioned according to the number of electors or members of the several churches, will necessarily be fraught with such evils. The weaker churches would have to go to the wall, or submit to the control of the stronger ones in all their temporal affairs at least; and interference with their temporal affairs would be justified or excused by the pretext of unsoundness of doctrine or departure from some usage of the church catholic.

The injunction in this case is a sweeping one, and most effectual to deprive the Eastern Church of the use of its property, including their house of worship, and virtually gives the possession of the same to the plaintiffs or the Western Church. It removes the warden of said church or prohibits him from discharging any of his duties; and orders the delivery of the keys of the Eastern Church meeting-house to the plaintiffs. It could scarcely be made more comprehensive and

effectual to turn the Eastern Church out of doors to worship and conduct their services wherever they can find a suitable place elsewhere. There is no other rule practicable or safe than to let each church, as well as every other body fictitious or personal, attend to its own business.

*By the Court.*— The order of the circuit court is reversed, and the cause remanded with direction to dissolve the injunction.