### The City of Guthrie v. W. D. Wylie, *et al.*
(Filed September 4, 1896.)

1. PROVISIONAL CITY—*No Lawful Authority Possessed By.* The so called provisional city of Guthrie was not a *de jure* nor *de facto* municipal corporation, and had no power to contract or bind itself or others, and its *de facto* or *de jure* successor or successors cannot be held liable upon its contract or for its torts.

2. MUNICIPAL CORPORATIONS—*Legislative Authority For.* Prior to May 2, 1890, there was no law in the Territory of Oklahoma authorizing the creation or existence of municipal corporations. Where there is no law authorizing *de jure* municipal corporations a *de facto* corporation cannot exist. Muncipal corporations can only exist under and by virtue of legislative enactment. (1 Okla., 293.)

3. ORGANIC ACT—*De Facto Corporations.* The Organic Act of May 2, 1890, made provision for 'the organization of Municipal corporations adopting and extending the Statutes of Nebraska over this Territory. The passage of said act did not *eo instanti* convert the provisional government of the city of Guthrie into a *de facto* municipal corporation. The provisions in said statute relating to the organization of villages requiring a majority of the taxable inhabitants of such village to present a petition to the county commissioners of the county, praying that they may be incorporated into a village, designating the name they wish to assume and the meets and bounds of the proposed village and requiring said commissioners to enter an order of incorporation upon their records designating the metes and bounds thereof and declaring the said proposed village incorporated and appointing trustees therefor, were conditions precedent to the vesting of any municipal authority in such village corporation. The inhabitants of the so-called provisional city of Guthrie, having failed until the first of August, 1890, to attempt to comply with these conditions, did not, before that date become a corporation *de jure* or *de facto.* To establish a corporation *de facto,* the existence of a law authorizing its formation; proceedings taken for that purpose, professed compliance with the law, and acts of subsequent user are essential. A *de facto* corporation is one where the proceedings for its organization is irregular or defective when by regularity of proceedings to incorporate, it might be one *de jure.*
(Syllabus by the Court.)

*Error from the District Court of Logan County; before Frank Dale, District Judge.*

*Bayard T. Hainer,* for plaintiff in error.

*Keaton & Cotteral,* for defendant in error.

The facts are stated in the opinion.

Opinion of the court by

TARSNEY, J.: The facts presented in this record necessary to be stated are: That on the 22nd day of April, 1889, the townsite of the present city of Guthrie in this

Territory was settled upon by townsite settlers; that by a popular vote the people living on said townsite in November, 1889, attempted and assumed to establish and organize a municipal city government. That they went through the forms of electing and qualifying a mayor, council, clerk, treasurer and other officers common to a city government. That the persons assuming to be such officers performed the duties usually incident to the authorities of a municipal corporation; assumed to pass ordinances, keep records, etc.; used a corporate seal, and was known as a "Provisional City Government." No distinction is shown between this organization and an ordinary city government, except that it is not assumed that it was organized by any legal authority, or under any statute or legislative grant. This provisional government, during its existence, assumed to pass ordinances, resolutions, etc., and to perform the usual functions, executive, legislative and judicial of an ordinary lawful city government, until about August 1, 1890. That on or about the fourth day of December, 1889, the common council, mayor and city clerk of said provisional government, undertook, by ordinance, to grant to W. D. Wylie, F. A. Willman and A. Devereaux the privilege of constructing, maintaining and operating a street railroad or street railroads in said provisional city. One of the conditions of said ordinance requiring the deposit, with the treasurer of said city, by the grantees in said ordinance, of a certain check for the sum of one thousand dollars, and that said grantees deposited with said treasurer a check for said amount, drawn on the North Texas National bank of Dallas, Texas, properly certified. Said check was to become forfeited to said provisional city, should the

grantees in said ordinance fail or refuse to comply with certain conditions in said ordinance specified. That afterwards, by agreement, T. J. Oliver and Fred Cullen were associated with the said Wylie, Willman and Devereaux in interest in the rights assumed to be granted by said ordinance, and in said deposited check. That on the 11th day of June, 1890, said check was by the treasurer of said city converted into money and said money was deposited with the treasurer of said city. That on the 13th day of June, the said common council of said provisional city, by resolution, declared a forfeiture of the rights assumed to have been granted by said ordinance, by reason of an alleged failure upon the part of the grantees therein to comply with the provisions thereof, and declared the money drawn on said check to be forfeited to said provisional city. That said council coverted and appropriated the said $1,000 of money to the use of the said city, using $300 thereof for the purpose of a fire department, and $700 for the purpose of a police department.

By the Organic Act of Oklahoma Territory, approved May 2, 1890, certain chapters and provisions of the Compiled Laws of the State of Nebraska, in force November 1, 1889, in so far as applicable, were adopted and extended over the Territory of Oklahoma and put in force therein. These laws of Nebraska, thus made operative in the Territory, provided for the organization of cities of the second class and villages, and under this statute, on or about the 1st of August, 1890, the village of Guthrie was organized and continued in existence until 1891, when the present city of Guthrie, plaintiff in error, was organized according to the laws of the Territory, enacted by the legislature of said Territory.

Defendants in error commenced this suit in the district court of Logan county to recover the said $1,000 and interest thereon from the present city of Guthrie. On the trial below, the court found for the defendants in error and rendered judgment in their favor for $1,337.70, from which judgment plaintiff in error has appealed to this court. The only assignments of error necessary to be considered are the following:

First: The complaint does not state facts sufficient to constitute a cause of action.

Third: That the decision of the court is contrary to law.

It is unnecessary for us to consider the circumstances of the organization of the so-called provisional government or its action in assuming to grant to the defendants in error the privilege of constructing, maintaining and operating a street railroad, or whether there was any failure or default upon the part of the defendants in error with reference to the conditions of the pretended grant of such right as would justify and authorize the forfeiture of the deposit, made to secure compliance with said conditions; as we must conclude that all and every act of said provisional government so-called, was without authority of law, there being at the time no lawful authority for its creation or existence. At the time this pretended government was established there was no law authorizing the creation of municipal governments in this Territory, and therefore no power to invest them with any of the functions of government. This so-called provisional government was not even a *de facto* corporation, and had no power or authority to contract or bind

itself or others dealing with it. Where there is no law authorizing *de jure* corporations, a *de facto* corporation cannot exist. It is unnecessary for us to elaborate this proposition, as it has already been clearly and definitely determined by this court (*Losey v. City of Guthrie*, 1 Okla. 188; *Blackburn v. Oklahoma City*, 1 Okla. 292; *Oklahoma City v. Richardson Lumber Co.* 3 Okla. 5.)

A municipal corporation which by law is the successor of another, and which acquires all the property, franchises, rights and improvements, and embraces the same territory, and is composed of the same people as its predecessor, is liable for the valid contracts and legal liabilities of such predecessor. (*Blackburn v. Oklahoma City, supra; Broughton v. Pensacola*, 93 U. S. 265; *Mobile v. Watson*, 116 U. S. 289; *Milner's Admr. v. City of Pensacola*, 2 Woods, 632; *O'Connor v. Memphis*, 6 La. 730; *Mt. Pleasant v. Beckwith*, 100 U. S. 514; *New Orleans R. R. Co. v. City of New Orleans*, 26 La. Ann.)

A municipal corporation will be held liable for the wrongful conversion of the money or property of a citizen. (*City of Oklahoma City v. Richardson Lumber Co.*, 3 Okla. 5.)

It follows from these authorities that if the government of the City of Guthrie, in existence and exercising governmental functions on the 13th day of June, 1890, was a *de jure* government, or even a *de facto* government, and it then converted to its use the one thousand dollars of the moneys belonging to the defendants in error, the liability therefor to said defendants in error was transmitted to its lawful successor, the present city of Guthrie, plaintiff herein, and that said plaintiff in error would be liable to defendants in error therefor.

This court, in the case of *Blackburn v. Oklahoma City*, cited *supra* held, that the act of congress approved May 2, 1890, made provision for the organization and existence of *de jure* municipal corporations in Oklahoma and that a provisional government, such as the so-called provisional government of Guthrie city, became and was a *de facto* corporation, from and after that date, and continued to be a *de facto* corporation until it was organized as a village corporation under and by virtue of said laws of the state of Nebraska. If this last authority embodies the correct principle of law, then it is decisive of this case and upon its authority the defendants in error would be entitled to recover. We are not now satisfied that that case correctly stated the principle involved.

The Organic Act of May 2, 1890, adopting certain chapters and provisions of the laws of Nebraska and extending the same over this Territory, made such laws operative from that date; but the record in this case does not show, nor did the record in *Blackburn v. Oklahoma City* show that the provisional city government ever took any steps to invoke the powers and authority that might be conferred by those laws, or to incorporate under such laws in the manner or according to the proceedings provided therein for incorporation.

The laws of Nebraska adopted for this Territory, did not contain any provision or authority for organizing cities where no corporation had previously existed. Those laws only provided for changing organized villages into cities and organized cities of one class into organized cities of another class; consequently, there was no authority under those laws for organizing any municipal corporation in this Territory, except a village cor-

poration, and the section of the statute relating to the constitution and incorporation of villages, reads as follows:

"SECTION 40: Any town or village containing not less than two hundred nor more than fifteen hundred inhabitants, now incorporated as a city, town, or village, under the law of this state, or that shall hereafter become organized pursuant to the provisions of this act, and any city of the second class which shall have adopted village government as provided by law, shall be a village, and shall have the right, powers, and immunities hereinafter granted and none other, and shall be governed by the provisions of this subdivision, * * * That whenever a majority of the taxable inhabitants of any town or village, not heretofore incorporated, under any law of this state, shall present a petition to the county board of the county in which said petitioners reside, praying that they may be incorporated in a village, designating the name they wish to assume, and the metes and bounds of the proposed village; and if such county board or a majority of the members thereof shall be satisfied that a majority of the taxable inhabitants of the proposed village have signed such petition, and that inhabitants to the number of two hundred or more are actual residents of the territory described in the petition, the said board shall declare the said proposed village incorporated, entering the order of incorporation upon their record, and designating the metes and bounds thereof; and thereafter the said village shall be governed by the provisions of this act applcable to the government of villages. And the said county board shall, at the time of the incorporation of said village, appoint five persons having the qualifications provided in sec. 42 of this act, as trustees, who shall hold their offices and perform all the duties required of them by law, until the election and qualification of their successors at the time and in the manner provided in this act."

In our opinion, no canon of construction would warrant an interpretation of this section that would make it self-operative. The act does not purport, in any of its provisions, to create villages. It simply authorizes their creation and incorporation by means of machinery it specifies, and in the manner and upon conditions expressly stated. By its terms, the inhabitants of a village, not incorporated, were required to present a petition to the county board, praying that they might be incorporated into a village, designating the name of the village, its metes and bounds; that then and not until then might said board declare the said proposed village incorporated; that they should enter the order of incorporation upon their records; that such order, thus recorded, should designate the metes and bounds of the lands embraced in said village, and that thereafter, only, should said village be governed by the provisions of the act.

The act did not, upon its adoption for this Territory, operate *eo instanti* to breathe the breath of life into municipal corporations whose inhabitants were unenumerated and whose territorial boundaries were undetermined. Compliance with the statute by filing a petition for incorporation, showing the required number of inhabitants, outlining the district over which the corporation was to exercise powers, praying incorporation, the action of the county board, its declarations of incorporation and its record, were all acts, the performance of which were conditions precedent to the vesting of any municipal authority in the corporation. (*Abbott v. Omaha Smelting Co.*, 4 Neb. 416; *Childs v. Hurd*, 32 W. Va. 66; *Spencer v. Cook*, 16 La. 163; *Bigelow v. Gregory*, 73 Ill. 197.)

If then there was no attempt to incorporate by com-

plying with the requirements of the statute, how could such organization be deemed to be a *de facto* corporation? What is a *de facto* corporation? It must appear to be acting under color of law. The existence of a law authorizing incorporation and mere user will not constitute a corporation *de facto*. (Thompson on Corporations, sec. 503.)

To establish a corporation *de facto*, the existence of a law authorizing its formation, proceedings taken for that purpose in professed compliance with the law, and acts of subsequent user are essential to be shown. (*Methodist Episcopal Union Church v. Picket*, 98 N. Y. 482; *Heaston v. Cin. Ft. Wayne R. R. Co.*, 16 Ind. 275.)

A *de facto* corporation is one where the proceedings for its organzation are irregular or defective, when by regularity of proceedings to incorporate, it might be one *de jure*.

It has been held in the state of Nebraska that the filing of articles of incorporation with the county clerk, is a condition precedent to the existence of any corporate franchise; that the law authorizing the incorporation and the articles so filed taken together, are considered in the nature of a grant from the state, and constitute the charter of the company. (*Abbott v. Omaha Smelting Co.*, 4 Neb. 416.)

In that case the court held that the effect of a failure to comply with such condition precedent, was that the parties acting in the matter did not bring themselves within the purview of the statute, and that no corporate franchise or corporate powers in any respect existed as to them; that they were not a *de facto* corporation.

In *Buffalo R. R. Co. v. Carey*, 26 N. Y. 77, the court says that:

"If the papers filed by which the corporation is sought to be created are colorable, but so defective that in a proceeding on the part of the state against it it would for that reason be dissolved, yet by acts of user under such organization, it becomes a corporation *de facto*."

In that case the company had its "papers filed" and therefore acted under a color of franchise.

If the mere continuance of acts begun in usurpation was to confer corporate franchises, why should the statute require a petition from the inhabitants to the county board praying incorporation, which should show the number of inhabitants, the extent and boundaries of the district and require the county board to judicially consider the petition, and declare the incorporation and make a record of their actions, and why should it require all this but as a prerequisite to corporate existence?

The general rule is that the existence of a corporation may be proved by producing its charter and showing acts of user under it; but this rule has no application to a corporation founded under the provisions of a general statute, requiring certain acts to be performed before the corporation can be considered *in esse*, or its transactions possess any validity. The existence of a corporation thus formed must be proved by showing a substantial compliance with the requirements of the statutes. (*Abbott v. Omaha Smelting Co. supra.*)

The right to be considered a corporation and to exercise corporate powers, depends upon the fact of the performance of the particular acts named in the statute, essential to its corporate existence. (*Field v. Cook*, 16 La. 153.)

It is said that persons who have contracted in writing with such an association without any color of franchise,

are not estopped from denying its corporate capacity. (*Welland Canal Co. v. Hathaway*, 8 Wend. 480; *Williams v. Bank of Michigan*, 7 Wend. 539.)

The authorities are too numerous to require citation that the doctrine is now settled, that where individuals have associated themselves together under corporate name and assumed to exercise corporate powers, without having complied with the essential requirements made conditions precedent in the statute of incorporation, they are not a corporation *de facto*, but are co-partners.

Applying these rules and the doctrine of the authorities here cited, and while the record in this cause shows that the so-called provisional government of the city of Guthrie, assuming to exercise corporate functions, prior to May 2, 1890, continued the assumption and exercise of such powers until the first day of August, 1890, when they were succeeded by a *de jure* village corporation, that during that time they filed no petition, nor did the inhabitants represented by them, file any petition invoking life and power from the statute, never made known to the board of county commisioners in any manner the number of inhabitants or the territorial boundaries of the district, never were declared by said county board to be an incorporation, and never claimed or pretended to be acting under authority of the law or under color of the law, we cannot find that there was any of the elements of a *de facto* corporation; but that the nature and character of the organization remained unchanged, and was the same from a period long prior to said 2nd day of May, 1890, to the first day of August of that year.

We must therefore conclude that on the 13th day of June, 1890, there was no *de jure* or *de facto* municipal cor-

poration existing at Guthrie; that the government or pretended government that reecived the check and money of the defendants in error and converted said money, was not a *de jure* or *de facto* corporation; that such moneys were converted to the uses and purposes of a police department and fire department for the employment of which there was no authority of law; and that such conversion of the money of defendants in error, did not create a legal liability to them that could be transmitted to any lawful municipal corporation thereafter organized under the law.

It follows that the rule of law upon this proposition was not correctly stated in *Blackburn v. Oklahoma City*, 1 Okla. 292, and that the present city of Guthrie is not liable to defendants in error for the moneys sued for; that the court below erred in rendering judgment in favor of the defendants in error and against the plaintiff in error.

The judgment of the court below is therefore reversed, and this cause dismissed.

All the Justices concur, except Dale, C. J., who tried the case below, and Bierer, J., who was of counsel in the cause, not sitting.