## OCEAN BEACH HEIGHTS, INC., et al. v. BROWN-CRUMMER INVESTMENT CO. et al.

No. 10.   Argued December 8, 1937.—Decided January 17, 1938.

*Messrs. Henry K. Gibson* and *J. Julien Southerland,* with whom *Messrs. Scott M. Loftin, John P. Stokes* and *James E. Calkins* were on the brief, for petitioners.

*Messrs. Giles J. Patterson* and *T. J. Blackwell* for respondents. *Messrs. Dewey Knight* and *A. Frank Katzentine* were with *Mr. Blackwell* on the brief.

MR. JUSTICE BUTLER delivered the opinion of the Court.

The question is whether for the payment of its outstanding bonds the respondent town may tax petitioners' lands which, without statutory authority, were included by boundaries defined in proceedings for its incorporation. Petitioners' contention is that the lands never were within the boundaries of the towns *de jure* or *de facto* and that therefore they are not subject to its taxing power.

The Florida statutes empower the male inhabitants of any hamlet, village or town "to establish for themselves a municipal government" (Compiled General Laws, 1927, § 2935) to be designated an incorporated town if it contains less than 300 registered voters, § 2936. They require notice specifying time and place of meeting and the proposed corporate limits, § 2937, and direct that "the qualified electors present, being not less than two-thirds of those whom it is proposed to incorporate and not less than twenty-five in number, shall select a corporate name . . . for the municipality . . . and designate by definite metes and bounds the territorial limits," § 2938.

In 1892, in *Town of Enterprise* v. *State,* 29 Fla. 128; 10 So. 740, 744; the state supreme court held that the statute did not permit incorporation of disconnected tracts of land, found a part of the territory proposed to be incorporated to be disconnected from the other part, and declared (p. 145): "An attempt to incorporate two distinct

detached tracts of land, as corporate territory under one government, is unauthorized and void. . . ."

In 1926, electors residing in Dade County, Florida, on the west side of Biscayne Bay, incorporated a town, Miami Shores, now called North Miami. The boundaries specified by the incorporators included approximately 16 square miles, 14 of which were on the west side of the bay and had a population of 2,500. Two square miles were on the east side and had but 12 inhabitants. Though nearly vacant, these lands were much more valuable than all the property on the west side. The water separating the two areas is about a half mile wide. At the time of incorporation, construction of a causeway had been commenced, but its beginnings having been destroyed by hurricane later in that year, it has not been built. By land the distance between the settlement on the west side and the east side area is about ten miles, and to go by land from one to the other it is necessary to pass through another municipality. Petitioners own lands on the east side.

Between January 1, 1927 and April 1, 1928, the town issued bonds, $238,000 of which are outstanding. In each bond the town pledged its faith and credit for payment and declared that provision had been made for the levy and collection, each year that the bond remained outstanding and unpaid, of sufficient taxes on all taxable property within its limits to pay principal and interest as they came due. But none of the bonds contained any statement indicating the boundaries of the town or in any manner representing that any part of the area on the east side of the bay was within its limits. The bonds were validated by decrees of the circuit court for Dade County, §§ 5106–5109, Compiled General Laws, 1927. No owner of east side land was party to the validation suits and no question as to whether the town included any part of the lands east of the bay was there involved. Pro-

ceeds of the bonds were used for the construction of permanent improvements; the only part spent on the east side was $6,000 for mosquito eradication, most of which went for equipment which the town still owns.

In a *quo warranto* suit brought by the State on the relation of its attorney general in August, 1929, and in a later suit brought by owners of east side lands to cancel tax certificates on their lands, the state supreme court held that the statute relied on for creation of the municipality did not authorize inclusion of non-contiguous areas. *Mahood* v. *State,* 101 Fla. 1254; 133 So. 90. *Leatherman* v. *Alta Cliff Co.,* 114 Fla. 305; 153 So. 845. And in those suits it was finally adjudged that the east side was not and never had been a part of the incorporated town, and that the town never acquired jurisdiction *de jure* or *de facto* over the land east of the bay. A decree of ouster as to the east side land was entered in December, 1931, and tax certificates on lands on that side were canceled. No bondholder was a party to either of these suits.

Prior to the *quo warranto* suit, the jurisdiction of the town over the east side was not challenged by the State, property owners or others. And until prevented by the decree of ouster, the town exerted municipal authority on both sides of the bay within the boundaries defined by west side electors acting to incorporate the town. It laid taxes on east side lands, some of which were paid by petitioners.

In 1930 respondent sued the town in the United States District Court for Southern Florida and got judgment on nine of the bonds. There was involved no question as to whether the east side lands ever were within the town or liable to be taxed to pay the bonds. In 1931 respondent brought in the same court a mandamus suit to compel the town and its officers to levy taxes on all the lands within the boundaries defined by the incorporators.

Owners of land on the east side including petitioners were permitted to intervene. They maintained that the town had no jurisdiction over their lands or authority to tax them. The court entered a decree commanding the town and its officers to tax all the property within the town limits as originally defined. The town and its officers did not object to the decree nor appeal from it. The intervening east side owners attempted to have it reviewed in the Circuit Court of Appeals. The court held that, as the judgment was not against them, they had no standing to question it and dismissed their appeal. 69 F. (2d) 105.

Then respondent brought this suit for itself and other bondholders against the town, its officers, the clerk of the circuit court of Dade County, and east side land owners, including the petitioners. It alleged that the town was unable to pay the bonds unless permitted to levy and collect taxes on east side property; that the town and its officers were ready and willing so to do, but were prevented by the decrees in the *Mahood* and *Leatherman* cases, and that the clerk of the circuit court was bound by the decree in the latter case. It prayed an injunction to restrain petitioners from interfering, by use of the ouster decree or otherwise, with the levy or collection of taxes on east side lands for the payment of respondent's judgment and the outstanding bonds and to restrain the town and the clerk of the court from refusing to levy or to take steps required for collection of such taxes. The town and its officers answered and in effect joined in the prayer of the bill. Petitioners moved to dismiss, the court denied their motion; two of them answered. The parties introduced their evidence, the court found the facts and entered its decree substantially as prayed. Petitioners alone appealed. The Circuit Court of Appeals affirmed on the ground that the town *de facto* included the east side lands. 87 F. (2d) 978.

That view cannot be sustained. This case differs essentially from those dealing with good faith attempts to organize municipalities under unconstitutional enactments presumed valid until adjudged repugnant to fundamental law. See, e. g., *Clapp* v. *Otoe County*, 104 Fed. 473, 482. *Speer* v. *Board of County Comm'rs*, 88 Fed. 749, 765. *Ashley* v. *Board of Supervisors*, 60 Fed. 55, 64. *City of Winter Haven* v. *Gillespie*, 84 F. (2d) 285, 287. *State* v. *City of Cedar Keys*, 122 Fla. 454, 462, 463; 165 So. 672. In the absence of a law authorizing the creation of a municipality *de jure* there can be none *de facto*. McQuillan, Municipal Corporations (2nd ed.), § 175. *City of Guthrie* v. *Wylie*, 6 Okla. 61, 66; 55 Pac. 103. *Norton* v. *Shelby County*, 118 U. S. 425, 444. *Shapleigh* v. *San Angelo*, 167 U. S. 646, 655–656. *Tulare Irrigation District* v. *Shepard*, 185 U. S. 1, 13. *United States* v. *Royer*, 268 U. S. 394, 397. *Evenson* v. *Ellingson*, 67 Wis. 634, 646; 31 N. W. 342. *Duke* v. *Taylor*, 37 Fla. 64, 77; 19 So. 172. The town *de jure* could not be made to include the east side. *Mahood* v. *State, supra*. *Leatherman* v. *Alta Cliff Co., supra*. Mere inspection of the statute and the defined boundaries unmistakably shows that the west side electors were without authority to incorporate the east side tract with that in which they resided. Unquestionably, these were detached tracts within the meaning of the statute. The state supreme court having held that attempted incorporation of detached areas was unauthorized and void (*Town of Enterprise* v. *State, supra*) there existed no color of authority for the inclusion of the east side. The east side lands could not be brought within the taxing power of the town by the owners' acquiescence in its attempted exertion of jurisdiction over them and payment of taxes thereon that it in form laid prior to the ouster decree. The town *de facto* could not derive from the consent of the east side owners jurisdiction that it *de jure* was without capacity to receive. The consent of owners of land located beyond permissible limits of the

municipality cannot be made to serve as would a statutory grant of power. *Hayes* v. *Holly Springs,* 114 U. S. 120, 126–127. *Merrill* v. *Monticello,* 138 U. S. 673, 693–694. As the east side lands never became liable to be taxed by the town to pay its bonds, respondents were not entitled to restrain petitioners from defending against levy and collection of the taxes or to any relief in this suit. The decree of the Circuit Court of Appeals will be reversed and the case will be remanded to the district court with directions to dismiss the bill.

*Reversed.*