**J. M. GOODWIN v. AMELIA B. SCHMIDT, et al.**

5 So. (2nd) 64                                        En Banc
December 16, 1941

Horton & Strahan, for appellant.

Kurtz, Reed, Sappenfield & Cooper, for appellees.

BUFORD, J.:

On July 17, 1940, appellant Goodwin exhibited his bill of complaint in the Circuit Court in and for Dade Couty, Florida, seeking to enforce a lien under the doctrine of subrogation against lot 6, Block 24 of Normandy Beach, second amended, according to a plat thereof recorded in Plat Book 16 on page 44 of the Public Records of Dade County, Florida.

The bill in effect alleged that appellant on December 22, 1937, surrendered to E. B. Leatherman, Clerk of the Circuit Court of Dade County, tax sale certificates Nos. 1343 and 1029-D assigned by the Town of North Miami and the tax sale certificates numbered 887, 926

and 972-C assigned by the Town of Miami Shores to appellant and requested the said Leatherman to issue the appellant a tax deed for the property described in the certificates in pursuance to law in the State of Florida in such case made and provided; that Leatherman as Clerk of the Circuit Court, as a prerequisite to the issuance of the tax deed to appellant, required to pay or redeem all outstanding subsequent and omitted taxes before such tax deed should be issued; that in compliance with the requirements of the statute in the regard and of the said Leatherman as Clerk, appellant did pay or cause to be paid or redeemed:

"Baker's Haulover Taxes for the years 1929 to 1932 inclusive, in the sum of $3.55, original receipt of said sum being hereto attached and marked plaintiff's 'Exhibit A,' Baker's Haulover Taxes for the years 1932 to 1935 inclusive, in the sum of $3.08 the original receipt showing payment of same being hereto attached and marked plaintiff's 'Exhibit B' Baker's Haulover District Taxes for the year 1936, in the sum of $1.47, the original receipts showing payment of same being hereto attached and marked plaintiff's 'Exhibit C;' that your orator likewise paid or redeemed all State and County taxes for the years 1929 through 1935 inclusive, in the sum of $136.36, the original receipt of same being hereto attached and marked as plaintiff's 'Exhibit D' that your orator paid or redeemed Okeechobee Flood Control District Taxes for the year 1929 to 1931 inclusive, in the sum of $2.76, the original receipts showing payment of same being hereto attached and marked plaintiff's 'Exhibit E;' that your orator paid or redeemed State and County taxes for the years 1936 and 1937 in the sum of $33.44, as evidenced by the original receipt showing payment of same being hereto attached and marked

plaintiff's 'Exhibit F.' That all the sums hereinabove set out in this paragraph of this Bill of Complaint were paid by your orator by virtue of the Laws of the State of Florida in reference to the issuance of tax deeds and as a pre-requisite to the issuance of said Tax Deed by E. B. Leatherman, Clerk of the Circuit Court in and for Dade Count, Florida; that said payment of taxes was not voluntary payment, but was made solely for the purpose of securing issuance of the Tax Deed upon said property by E. B. Leatherman, Clerk of the Circuit Court of Dade County, Florida."

It is further alleged that prior to the date on which the tax deed was to issue to appellant, under his application, supra, Leatherman, as Clerk, advised appellant that the tax sale certificates hereinabove referred to were void and that he had no authority under law to issue such tax deed based on said certificates and that he based his conclusion in this regard upon the decision of the Supreme Court of the United States.

(We may assume that Leatherman had reference to the case of Ocean Beach Heights, Inc. v. Brown-Crummer Investment Co., 302 U.S. 614, 82 L. Ed. 478).

It is alleged that by reason of the failure of the clerk to issue the tax deed, appellant was denied the right to have such tax deed issued but, he avers, that he is nevertheless in position of having paid or redeemed all valid subsequent and omitted taxes assessed against said property. He avers that by reason of such facts he is entitled to and should be subrogated to the rights of the State of Florida and to the rights of Baker's Haulover District and the Okeechobee Flood Control District for such taxes as had been paid by appellant as alleged and that by

reason of such subrogation, appellant claims a first lien upon the property described.

He then makes allegations as to the interest held by the defendants in the lands to show that they are proper parties defendant to the suit. He prays for an adjudication of a lien in his favor for the amount of taxes so alleged to have been paid to Leatherman as Clerk under the doctrine of legal subrogation.

Subrogation is either legal, that is, the right arising by operation of law, or else it is conventional, in which case the right arises by reason of contract between the parties.

In Boley v. Daniel, 72 Fla. 121, 72 Sou. 644, we held:

"Subrogation is the substitution of one person in the place of another with reference to a lawful claim or right.

"Subrogation arises by operation of law where one having a liability or a right or a fiduciary relation in the premises, pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid. This is called legal subrogation.

Conventional subrogation depends upon a lawful contract and occurs where one having no interest in or relation to the matter, pays the debt of another, and by agreement is entitled to the securities and rights of the creditor so paid."

See Sheldon on Subrogation Nos. 2, 140; Rice v. Winters, 45 Neb. 517, 63 N.W. Rep. 830; Watson v. Wilcox, 39 Wis. 643; Home Savings Bank v. Bierstadt, 168 Ill. 618, 48 N.E. Rep. 161, 61 Am. St. Rep. 146. See also Dodge v. Kistler, 140 Fla. 209, 191 Sou. 301.

Unless appellant alleged sufficient facts in his bill of complaint to warrant the adjudication of a lien in his

favor under the doctrine of legal subrogation, he did not plead a cause of action.

Whether or not the doctrine of subrogation applies in this case depends upon whether or not the payment of the items of taxes due to the State of Florida, the County of Dade, Baker's Haulover Drainage District and Okeechobee Flood Control District as alleged in the bill of complaint constituted a voluntary payment of taxes of another which the appellant was under no obligation to pay, or constituted an involuntary payment because of the requirement of law or some legal duty to pay the same.

The bill of complaint does not allege when the appellant procured by assignment the tax sale certificates issued by Town of Miami Shores and by the Town of North Miami on which he sought issuance of tax deed. The bill does show, however, that the application for tax deed was made to the Clerk of the Circuit Court on the 22nd day of December, 1837.

In the case of Mahood, et al., v. State ex rel Davis, et al., 101 Fla. 1254, 133 So. 90, in opinion and judgment filed March 24, 1931, it was held:

"It is admitted that Miami Shores was a hamlet or village and if the allegation of the information that that hamlet or village, was located entirely west of Biscayne Bay then there was no authority in law for the inclusion of the territory East of Biscayne Bay within the corporate limits of the Town of Miami Shores."

And in the case of Leatherman, Clerk, et al., v. Alta Cliff Co., et al., 114 Fla. 305, 153 Sou. 485, opinion and judgment in which was filed March 21, 1934, we said:

"The lands upon which these certificates were issued were located in that area of the original proposed town of Miami Shores lying east of an imaginary line

running northeasterly and southwesterly about the middle of Biscayne Bay and constituted a part of the lands involved in the case of Mahood v. State, ex rel. Davis, et al., 101 Fla. 1254, 133 Sou. 90. In that case we held:" (Then was quoted the paragraph above quoted).

Then we said:

"Our mandate reversing the cause was issued pursuant to the opinion and judgment being filed on March 24, 1931. After the going down of the mandate the circuit court entered an order wherein and whereby the city officers and the Town of North Miami formerly known as the Town of Miami Shores were each and all ousted, excluded and prohibited from exercising municipal functions over the territory in which the lands here involved are embraced.

The ouster of jurisdiction was necessarily based upon the finding and adjudication that there had never been any authority in law for the inclusion of the territory east of Biscayne Bay within the corporate limits of the Town of Miami Shores and if there had never been any lawful authority for the inclusion of that territory within the municipality, then the municipality never acquired any *de-facto* or *de jure* jurisdiction over the lands embraced in that territory." . . .

And further in that opinion we said:

"The judgment in the case of Mahood v. State ex rel. Davis, supra, was pleaded in this case and, therefore, the circuit court, as well as this Court, was, and is, authorized to take judicial cognizance of the record and judgment in that case.

"Looking to the record in the case of Mahood v. State ex rel. Davis, supra, we find that the State has, through its proper officer and by proper procedure,

successfully contested the right of the municipality there and here involved to exercise any municipal functions or franchises over that territory sought to be included within the territorial jurisdiction of the municipality and lying east of about the middle of Biscayne Bay. We find that the lands upon which certificates have been issued, which are the subject matter of this suit, life in that territory which has been excluded by a valid judgment from any attempted jurisdiction on the part of the municipality or its officers.

"Unless the tax certificates constitute liens on the property described in such certificates, then certainly the sale thereof, or the issuance of deeds thereunder, should be enjoined because, while a deed might not pass any title, it would appear on the record to create a cloud on the title and, as the municipality never at any time had any legislative authority to exercise any sort of jurisdiction over that territory in which the lands lie, all its acts in that regard were null and void and the certificates are without any force or effect."

In the case of Ocean Beach Heights, Inc., et al., v. Brown-Crummer Investment Co., 302 U.S. 614, 82 L. Ed. 478, in an opinion and judgment rendered January 17, 1938, the Supreme Court of the United States, speaking through Justice Butler, and having reference to the taxing power of the Town of Miami Shores, now called North Miami over certain lands involved in the suit of Mahood v. State ex rel. Davis, et al., supra, said:

"In a quo warranto suit brought by the State on the relation of its attorney general in August, 1929, and in a later suit brought by owners of east side lands to cancel tax certificates on their lands, the

state Supreme Court held that the statute relied on for creation of the municipality did not authorize inclusion of non-contiguous areas. Mahood v. State, 101 Fla. 1254, 133 So. 90; Leatherman v. Alta Cliff Co., 114 Fla. 305, 153 So. 845. And in those suits it was finally adjudged that the east side was not and never had been a part of the incorporated town, and that the town never acquired jurisdiction *de jure* or *de factor* over the land east of the bay. A decree of ouster as to the east side land was entered in December, 1931, and tax certificates on lands on that side were canceled. No bondholder was a party to either of these suits.

"Prior to the quo warranto suit, the jurisdiction of the town over the east side was not challenged by the State, property owners or others. And until prevented by the decree of ouster, the town exerted municipal authority on both sides of the bay within the boundaries defined by west side electors acting to incorporate the town. It laid taxes on east side lands, some of which were paid by petitioners."

And the Court further said:

"In the absence of a law authorizing the creation of a municipality *de jure* there can be none *de facto*. McQuillin, Mun. Corp. 2 Ed. Sec. 175; Guthrie v. Wylie, 6 Okla. 61, 66, 55 P. 103; Norton v. Shelby County, 118 U.S. 425, 444, 30 L. Ed. 178, 187, 6 S. Ct. 1121; Shapleigh v. San Angelo, 167 U.S. 646, 655, 656; 42 L. Ed. 310, 313, 314, 17 S. Ct. 957; Tulare Irrig. Dist. v. Shepard, 185 U.S. 1, 13, 46, L. Ed. 773, 779, 22 S. Ct. 531; United States v. Royer, 268 U.S. 394, 397, 69 L. Ed. 1011, 1013, 45 S. Ct. 519; Evenson v. Ellingson, 67 Wis. 634, 646, 31 N.W. 342; Duke v. Taylor, 37 Fla. 64, 77, 19 So. 172, 31 L.R.A. 484, 53

Am. St. Rep. 232. The town *de jure* could not be made to include the east side. Mahood v. State, 101 Fla. 1254, 133 So. 90, supra; Leatherman v. Alta Cliff Co., 114 Fla. 305, 153 So. 845, supra. Mere inspection of the statute and the defined boundaries unmistakably shows that the west side electors were without authority to incorporate the east side tract with that in which they resided. Unquestionably, these were detached tracts within the meaning of the statute. The State Supreme Court having held that attempted incorporation of detached areas was unauthorized and void (Enterprise v. State, 29 Fla. 128, 10 So. 740, supra) there existed no color of authority for the inclusion of the east side. The east side lands could not be brought within the taxing power of the town by the owner's acquiescence in its attempted exertion of jurisdiction over them and payment of taxes thereon that it in form laid prior to the ouster decree." . . .

It is, therefore, clearly seen that there was never any authority in the Town of Miami Shores or in the municipality of North Miami to levy any tax of any sort against the lands lying east of Biscayne Bay which were attempted to be included in the corporate limits of the Town of Miami Shores and in which the lands involved in this suit are located. This being true, no paper that could have been issued or assigned by the town of Miami Shores or the municipality of North Miami could have had any efficacy or standing as a tax sale certificate on the lands involved here. Those pretended certificates assigned to the appellant were of no force and effect of any sort. They constituted no basis for the application for a tax deed and, therefore, the appellant acquired no rights as an

applicant for tax deed under the assignment of the pretended certificates.

It is well settled that when the purchaser of a tax sale certificate, or what pretends to be a tax sale certificate, purchases at a tax sale or takes an assignment after the sale, he does so under the operation and within the purview of the rule of caveat emptor. See Brown v. Snell, 6 Fla. 741; Graham v. Fla. Land & Mortgage Co., 33 Fla. 356, 14 Sou. 796; R. D. Lamar Inc. v. Ray, 132 Fla. 704, 182 Sou. 292; McCormick v. Bouentheau, 139 Fla. 461, 190 Sou. 882.

In the case of Graham v. Fla. Land & Mortgage Co., supra, it was said:

"A tax purchased buys under the operation of the rule *caveat emptor,* and at common law gets nothing unless he secures the land itself. Judge Cooley says 'he takes all the risks of his purchase, and if he finds in any case that he has secured neither the title he bid for, nor any equitable claim against the owner, the state may, if it see fit, make reparation itself; but it has no more authority to compel the owner of the land to do so than to exercise the like compulsion against any other person.' Constitutional Limitations, page 533; Ibid, pages 475, 476. Such a purchaser is not, therefore, a bona fide purchaser in the strict technical sense of the term as understood in the law. Provision has been made requiring the owner upon recovering the land, under certain conditions, to refund the taxes that have been paid on the same by the tax claimant, but nothing beyond this has been provided for such purchaser as a claim against the land owner."

It appearing that there was no municipal tax sale and that the municipal tax sale certificates relied upon

as a basis for a tax deed were void and of no force and effect, it follows that the appellant was under no legal duty or legal obligation to pay the taxes which had been assessed by Baker's HaulOver District or by the State of Florida and County of Dade, or by the Okeechobee Flood Control District, and that his payment thereof to the Clerk was a voluntary payment. If the appellant had taken an assignment of delinquent tax sale certificates, the certificates so assigned might be enforced as a lien but he voluntarily chose to redeem and pay the taxes. The defendants may be under some sort of moral obligation but the payment constituting the voluntary act of the appellant, he could not enforce reimbursement from the land owners under the doctrine of subrogation to the lien established by the assessment of the tax by the taxing unit.

Mr. Cooley in his work on Taxation, Vol. 3, Sec. 1260, says:

"The persons who, besides the owner, would be entitled to make payment, would include any who may have been assessed for the tax, and any others whose interests would be affected injuriously by a sale, either because of liens they may have, or of contract relations; and anyone having the right may depute another to make it for him. Such a person who makes payment of taxes due to protect his interests may recover the amount paid from the person liable for the tax; and such a recovery is often expressly provided for by statute. So he has a lien on the property for the amount paid, and sometimes is subrogated to the tax lien enjoyed by the taxing district. Thus, a person who in good faith and under color of title claims to be the owner of real property may pay

the taxes thereon, so as to be entitled to reimbursement if his claim to title is subsequently defeated; and this generally includes one who pays under an honest but mistaken belief as to the state of the title where the mistake is not the result of his own negligence or ignorance of the law.

Whether any third person may make payment is not clear; but as the state is interested only in obtaining the revenue it has called for, it would seem that, before any sale, and consequently before any rights of third parties have intervened, any mere volunteer may pay the tax if he chooses; and the payment would be effectual, so far at least as to terminate the lien of the tax upon the land; though if the statute undertook to give the person making the payment rights in the land by reason thereof, the payment might not be effectual to confer such rights; for no one can assume to stand in the place of the owner for the purpose of performing an act which the owner himself sees fit not to perform, and claim thereby to establish rights against the owner of his property by what, under such circumstances, would be an officious intermeddling. It has therefore been held that the lien which the statute gives to one who pays a tax on land attaches only in case the person paying had an interest, either personally or as agent; though if he were a mere intermeddler, and the owner should subsequently claim the benefit of the payment, there would be no injustice in holding that he thereby adopted the act of payment with all the statutory consequences. The officer who received the payment would himself be precluded from raising any question of its sufficiency. A stranger or mere volunteer who pays the tax ordinarily is not entitled to reimburse-

ment from the owner, nor to a lien. One paying a tax on request of the owner and a promise to reimburse, has a lien."

The last paragraph of Sec. 794 R.G.S., as amended by Chapter 12409, Acts of 1927, Section 1020 C.G.L., is as follows:

"Any holder of a tax deed or of a tax certificate shall have a lien thereunder for the amount paid therefor upon the land described therein and such lien may be enforced and foreclosed by suit in equity as provided by law for the enforcement of statutory liens.", cannot be relied upon because it has been invalid. See Townsend, et al., v. Beck, 140 Fla. 553, 192 Sou. 390; Douglass, et vir., v. Tax Equities Inc., 144 Fla. 791, 198 Sou. 5.

The provisions of Sec. 795 R.G.S., 1026 C.G.L., do not apply here because this is not a suit by the original owner to recover the lands held by another under a tax deed. The owner has not come into a court of equity to do anything except to defend the suit which has been instituted by one claiming a lien under the doctrine of subrogation.

For the reasons stated, we must hold that the bill failed to state any ground for equitable relief and the decree from which appeal is taken is affirmed.

So ordered.

BROWN, C. J., WHITFIELD, TERRELL, CHAPMAN, and THOMAS, JJ., concur.

ADAMS, J., dissents.

BROWN, C. J., concurring:

While the holding in Boley v. Daniel, 72 Fla. 121, 72 So. 644, cited in the foregoing opinion, was later modified to some extent in Federal Land Bank v. Godwin, 107 Fla. 537, 136 So. 513, 145 So. 883, and

Federal Land Bank v. Dekle, 108 Fla. 555, 148 So. 756, at least as applied to the facts in those cases. I think the paragraphs above quoted from Boley v. Daniel are still a correct statement of the general principles involved and are not changed by our subsequent cases.