**PAYNE et al. v. FIRST NAT. BANK OF COLUMBUS, OHIO.  (No. 615-4116.)**

(Commission of Appeals of Texas, Section A. Feb. 9, 1927.)

**1. Municipal corporations ⬥⮞902—City issuing nonnegotiable warrants, purporting to be payment to bridge contractor, held estopped as against purchaser to assert warrants were void (Rev. St. 1911, arts. 854, 857).**

Where city issued nonnegotiable warrants purporting to be given contractor for building bridge, under recitals of ordinance, city *held* estopped, in suit on warrants by purchaser without notice and for value, to claim that warrants were void because given for purpose of borrowing money, in view of city's authority, under Rev. St. 1911, arts. 854, 857, to construct bridges and improve streets, and in view of use of money borrowed for bridge building.

**2. Municipal corporations ⬥⮞897—City, authorized to construct bridge, had implied authority to issue warrants for price (Rev. St. 1911, arts. 854, 857).**

Authority given city by Rev. St. 1911, arts. 854, 857, to construct bridges and improve streets, included implied authority to make such improvements on credit, and to issue interest-bearing warrants for deferred payments.

**3. Assignments ⬥⮞103—Maker of nonnegotiable instrument may by representations be estopped to set up defenses against assignee.**

Rule that assignee of nonnegotiable instrument takes subject to defenses is subject to qualification that debtor may, by his representations or conduct, estop himself to set up against assignee defenses which were available as against assignor.

**4. Estoppel ⬥⮞62(5)—Liability of city for estoppel depends on scope of authority of agency making misrepresentation and relationship of misrepresentation to execution of authority.**

Whether municipal corporation is subject to estoppel depends on scope of authority of city agency through which misrepresentation was made and relation of misrepresentation to execution of that authority.

**5. Municipal corporations ⬥⮞51—Assignee of nonnegotiable warrants executed by corporation having de facto existence could recover thereon against city after dissolution (Const. U. S. art. I, § 10, cl. I).**

Assignee of nonnegotiable warrants, executed by city having de facto corporate existence, could recover against city and city officers in action thereon, though corporation had been dissolved and no provision made for payment of creditors, as contracts of de facto corporation are within protection of Const. U. S. art. 1, § 10, cl. 1, and dissolution without provision for enforcement of contracts left old remedies therefor in full force and effect.

**6. Municipal corporations ⬥⮞17—Community incorporated without sufficient residents held de facto corporation.**

Where community undertook to incorporate itself as city under general statutes, without

legal authority to do so, because it contained less than required number of inhabitants, proceeding being colorably in compliance with statute, and where city after organization proceeded for over three years to function as city and exercise its powers, community became de facto corporation from time of organization until legal dissolution, bound by its acts and contracts during such period.

**7. Municipal corporations ⬥⮞17—De facto municipal corporation is bound by its contracts.**

City having de facto existence from time of organization until legally dissolved, or ceasing to function, is bound by its acts and contracts.

**8. Constitutional law ⬥⮞121(2)—Restriction against impairment of obligations of contracts applies equally to contracts of de facto and de jure municipal corporations (Const. U. S. art. I, § 10, cl. I).**

Contracts of de facto municipal corporations are accorded same legal status as those of de jure corporations; restriction of Const. U. S. art. 1, § 10, cl. 1, against impairment of obligations of contracts being equally applicable to each.

**9. Municipal corporations ⬥⮞51—Contracts of de facto municipal corporation remain valid after corporation's dissolution.**

Contracts of de facto municipal corporation are not only valid during corporation's existence, but they retain their validity after corporation has been dissolved.

**10. Municipal corporations ⬥⮞51—After dissolution of de jure municipal corporation, preexisting remedies for enforcement of corporation's contracts remain.**

Where de jure municipal corporation is dissolved by Legislature without provision for protection and enforcement of corporate contracts, pre-existing remedies necessary for their protection and enforcement remain.

**11. Municipal corporations ⬥⮞51—Powers of de facto municipal corporation necessary to protect corporate contracts, including power to tax, survive dissolution.**

Powers of de facto municipal corporations necessary for protection of corporate contracts. which were assumed and held by de facto corporation including power of taxation, survive dissolution of corporation, unless adequate protection for corporate contracts is otherwise provided.

**12. Municipal corporations ⬥⮞51—Jurisdiction of court to dissolve municipality will not be construed to impair obligations of contracts.**

Provisions of state Constitution and statutes passed thereunder, conferring jurisdiction on district court in quo warranto proceedings to dissolve municipal corporations, will not be interpreted as including power to impair obligations of valid contracts of municipality.

**13. Municipal corporations ⬥⮞51—Quo warranto judgment destroying corporate existence did not impair power of officers to protect city's creditors.**

Where quo warranto judgment was entered against city, destroying corporate existence for

unauthorized incorporation, on account of insufficient number of residents, and no provisions were made, at time of dissolution or subsequently, for protection and enforcement of rights of creditors, power of city to take steps to protect and enforce creditors' rights remained unimpaired in officers holding office at time of dissolution.

**14. Municipal corporations ☞51—Officers of dissolved municipal corporation were required to exercise powers to protect creditors.**

Officers of municipal corporation, dissolved because incorporated without authority, were required to exercise powers for use and benefit of creditors of defunct corporation, as trustees, in same manner as if corporation still existed, where no other provision for enforcement of creditors' rights were made.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by the First National Bank of Columbus, Ohio, against the City of North Pleasanton and others. Judgment for defendants was reversed' and remanded by the Court of Civil Appeals (257 S. W. 609), and W. L. Payne and others bring error. Judgment of the Court of Civil Appeals, reversing and remanding judgment of the trial court, affirmed, with instructions to trial court.

J. R. Garnand and Nat L. Hardy, both of Jourdanton, for plaintiffs in error.

Davis & Long, of San Antonio, for defendant in error.

HARVEY, P. J. On November 28, 1916, an election was held for the purpose of incorporating North Pleasanton as a "town or village" under the general law. A majority of the votes cast in the election were favorable to incorporating. Returns of the election were duly made and canvassed, and the proper entries and record made declaring the town a corporation. The holding of the election, making and canvassing the returns, and declaring the incorporation of the town, were in all things regular and in conformity to statutory requirements. In due time the corporation was organized by the election of the various officers thereof, under the statutes, and these officers proceeded to act and exercise the powers of office. Thereafter, on January 19, 1917, by due statutory proceeding, the corporation, through its board of aldermen, changed the character of the corporation to a "city or town" of less than 5,000 inhabitants, under the general law. From and after the date last named the city functioned and exercised all the powers, franchises, and rights that pertain to a city or town duly incorporated and organized under the general law, and continued to do so until April 5, 1920.

The territorial boundaries of the city, as so undertaken to be incorporated, overlapped a substantial part of territory that lay within the corporate boundaries of the town of Pleasanton, which town, we assume for present purposes, had been duly incorporated under the general law before the incorporation election for North Pleasanton was held. This overlapped territory constituted approximately one-eighth of the territory of North Pleasanton, and about one-eighth of the inhabitants of that city resided therein. Later the town of Pleasanton was converted into a city by adoption under the general law, and still exists as such. With the inhabitants of the overlapped territory mentioned above eliminated from the count, there has never been the required number of inhabitants in North Pleasanton to form an incorporated city or town under the general law. In February, 1920, the state instituted quo warranto proceeding seeking to oust said city from usurping corporate capacity. Such proceeding resulted in a judgment being duly entered by the district court, ousting from office all the city officers and declaring the corporation void. The plaintiff herein was not a party to such proceeding. Since that judgment was rendered the city has not functioned as a municipal corporation.

On March 15, 1917, the city council of the city of North Pleasanton, being desirous of procuring money with which to build a bridge across Atascosa river in said city and making certain improvements on the city streets, duly passed and caused to be entered upon the city minutes an ordinance, wherein it was recited that a contract in writing was made and entered into by and between the city and one J. A. Neill, whereby the latter agreed and was bound to construct said bridge and street improvements, and to furnish all material therefor, at a price of $7,750. to be paid by the city in city street and bridge improvements warrants. It was provided by such ordinance that said warrants were to be in denominations named, payable to Neill, his assigns or bearer, were to mature serially on the 26th day of each succeeding March thereafter, and were to bear interest from date of issuance at the rate of 6 per cent. per annum, payable annually, to be evidenced by interest coupons attached to the warrants. It was further provided that the warrants were to be delivered to Neill as the work progressed, upon approved estimates of the work done. By the provisions of such ordinance, a street and bridge tax of 15 cents on the $100 valuation of all taxable property in the city was levied for the current year, and so much thereof as shall be necessary for each succeeding year while the warrants, or any of them, are outstanding, for the purpose of paying the principal and interest of the warrants as same accrued, and provision was made for the assessment and collection of such tax each year for said purpose.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

During the next few weeks the city council passed and entered a series of ordinances purporting to approve estimates of the work previously done under the contract, and directing a delivery of a corresponding amount of the warrants to Neill. The last of the series of ordinances recites the completion of all the work in accordance with the contract, and acceptance of same by the city, and purports to direct that all the undelivered warrants be delivered to Neill. As a matter of fact, none of the work mentioned in the ordinances had been done at the time these several ordinances were passed. It was never intended by the city and Neill that the latter should perform the contract that was recited, but the method pursued, as above shown, was simulated for the purpose of making the transaction appear legal on its face, in order that the warrants might be sold by Neill in behalf of the city, and the proceeds of sale used by the city itself in building the bridge and making the other improvements mentioned in the Neill contract. Neill did not in fact perform such contract. In pursuance of the several ordinances mentioned above, the warrants were formally issued and delivered to Neill, who, in accordance with the arrangement that had been agreed upon between him and the members of the city council, sold and assigned them to one J. L. Arlitt for the price of 85 cents on the dollar, and the proceeds of such sale were turned over to the city and by it used to build the bridge and make the street improvements mentioned in the said ordinances.

At the time Arlitt bought the warrants, he had full knowledge of the real purpose of the city in issuing the warrants, and of all the facts attending their issuance. Afterwards Arlitt sold and assigned the warrants to various persons, who, in turn, sold and assigned them to the plaintiff herein, the First National Bank of Columbus, Ohio, who paid valuable consideration therefor. Duly certified copies of the several ordinances, in pursuance of which the warrants were issued, as same appear upon the city minutes, were exhibited to the bank at the time it purchased the warrants, and the bank bought and paid for the warrants, in good faith, relying upon the recitals and provisions of such ordinances, and without notice of the real purpose for which the warrants were issued, or of the real facts attending their issuance and delivery to Neill.

A few months after the issuance of the Neill warrants the city issued certain other warrants to one J. J. La Flower, for the purpose of obtaining money with which to construct a fire truck house and water mains, under circumstances and in a manner similar to those under which the Neill warrants were issued, and the plaintiff bank acquired such warrants in the same way and under the same circumstances as it did the Neill warrants. Inasmuch as the principles which we shall announce apply to and govern the La Flower warrants, there is no necessity for us to mention them further in the discussion.

After the judgment of dissolution was entered against North Pleasanton, the said bank brought this suit on the Neill and the La Flower warrants, naming as parties defendant, among others, all the persons who held office under the city of North Pleasanton at the time said judgment of dissolution was entered, and they are now parties defendant herein. The plaintiff in its suit seeks to establish said warrants as valid claims against the city of North Pleasanton, and prays for mandamus and other proper orders directing the former officers of said city to proceed with the levy, assessment, and collection of taxes for the purpose of paying the warrants, and for general relief.

The defendants, who are the defendants in error here, contest plaintiff's suit, contending in substance, first, that the real purpose for the issuance of the warrants being to borrow money, the warrants are void, and, because the warrants are not negotiable instruments, they are subject to such defense in the hands of the bank; second, that the incorporation of the city of North Pleasanton is and was void, and the pretended corporation had no power to make a valid contract; and, third, that, conceding the validity of the warrants as the binding obligations of the city as a de facto corporation, the Legislature had made no provision for their payment upon the dissolution of such de facto corporation, and a court of equity has no power to enforce them.

Upon the trial of the case in the court below, the court entered judgment in favor of the defendants, and declared and adjudged that said warrants, and all interest coupons attached thereto, are null and void, and ordered same canceled. On appeal, the Court of Civil Appeals reversed this judgment. See 257 S. W. 609, where the case is reported under the style of First National Bank of Columbus, Ohio, v. City of North Pleasanton et al. The case is now before us on writ of error, the style of the case having been changed here.

[1] A proper disposition of this case does not require a consideration of the question as to whether or not the warrants are void for lack of authority in the city to borrow money in the manner it did, and a decision of that question is pretermitted; for, even though the city were not authorized to borrow money as it did, it does not follow that the city may avail itself of that defense here.

[2] The city, by virtue of articles 854 and 857 of the Revised Civil Statutes of 1911, was expressly authorized to construct bridges and improve streets. The authority given by these statutes includes an implied authority to make such improvements on credit, and to issue interest-bearing warrants for the deferred payments of the price. Lasater v. Lopez,

110 Tex. 179, 217 S. W. 373; Bridges v. Lampasas (Tex. Civ. App.) 249 S. W. 1083 (writ refused).

[3] The warrants are nonnegotiable instruments. The general rule is to the effect that an assignee of a nonnegotiable instrument takes it subject to all defenses held by the debtor. To this general rule there is a qualification which is aptly stated in 5 Corpus Juris, p. 966, in the following language:

"The general rule that an assignee acquires no greater rights than his assignor, is subject to the qualification that the debtor may by his representations or conduct estop himself to set up against the assignee defenses which were available to him against the assignor."

This qualification to the rule, in its application to the individual citizen, is founded in the soundest principles of equity. 2 Pom. Eq. Jur. §§ 704, 820; 2 R. C. L. p. 631; Cowdrey v. Vandenburgh, 101 U. S. 573, 25 L. Ed. 923; Fugate v. Hansford, 3 Litt. (Ky.) 263; Springle v. Morrison, 3 Litt. (Ky.) 52, 14 Am. Dec. 41; Follett v. Reese, 20 Ohio, 546, 55 Am. Dec. 472; Jones v. Hardesty, 10 Gill & J. (Md.) 404, 32 Am. Dec. 180; Grissler v. Powers, 81 N. Y. 57, 37 Am. Rep. 475; Lee v. Kirkpatrick, 14 N. J. Eq. 264.

[4] In determining whether a municipal corporation is subject in a particular case to estoppel restrictions, it is necessary to ascertain the scope of authority of the city agency through which the misrepresentation of facts was made and the relationship of the misrepresentation to the execution of that authority. In the instant case the city, through its council, had authority to construct bridges and improve streets, and, when such improvements were made, to issue warrants of the city to cover the cost thereof. By means of the warrants in question, supported by false affirmations of fact by the city council to the effect that these improvements had been actually made by the person to whom the warrants were issued, the city obtained money which it used in making these very improvements. Though it be conceded that the indirect method thus employed to accomplish this authorized end do not bear expressed statutory sanction, the stubborn fact remains that the city got the bridge and street improvements, in payment for which the warrants purport to have been issued, and for which money derived from the sale of the warrants went to pay.

The ultimate thing that the city council was authorized to do, and contemplated doing, in behalf of the city, was in fact done by means of money received on warrants purporting to be issued for that purpose. We are not convinced that courts may not treat these improvements, so obtained by the city, as the real consideration for the city's obligation on the warrants. But, be this as it may, and whatever might have been the legal effect on the warrants, if the money derived from them had been used for other municipal purposes, we are thoroughly convinced that a municipal corporation, under the facts of this case, should be held to rules of estoppel, the same as the individual citizen would be under the same circumstances.

At the risk of unduly prolonging this opinion, we shall here quote from the court's opinion in the case of Slayton v. Panola County (D. C.) 283 F. 335, language which is remarkably apposite here. The court says:

"Despite the methods employed in the issuance of these warrants, if the proceeds had been in fact used to make improvements on the courthouse and jail, probably no complaint could be made. Ault v. Hill County, 102 Tex. 335, 116 S. W. 359. The fact that the ruse of outstanding warrants was resorted to would not, in such event, as regards the plaintiff's rights, change the character of the real transaction. However that may be, the important fact remains that the commissioners' court had the authority, in the exercise of the discretion of its members, to determine to make such improvements and to issue valid warrants for such purposes. * * *

"In using the power thus delegated to them, the commissioners were transacting the routine business, or exercising what some of the courts term the 'proprietary powers' of the county. Such procedure is different from the exercise of governmental functions, or the disposition of those larger questions that are determined by the public consent or intervention. The authorities are practically unanimous that, as regards such routine or business engagements, the doctrine of estoppel applies to municipal corporations just as to individuals. Trust Co. v. Arkansas City, 22 C. C. A. 171, 76 F. 271, 34 L. R. A. 518; Kneeland v. Gilman, 24 Wis. 39; Macon County v. Shores, 97 U. S. 279, 24 L. Ed. 889. The doctrine itself, as applied in this case, would have no relation to the validity or invalidity of the act of the commissioners. It has to do with whether such act should prevent the county from asserting the invalidity. It is called estoppel, 'because a man's owne act or acceptance stoppeth or closeth his mouth to alleage or plead the truth.'"

In the present case the bank bought the warrants in good faith, for a valuable consideration without notice of the real facts, and in reliance upon the truth of the recitals of the warrants and the several ordinances relating to their issuance. As against the bank, the city was estopped from asserting a defense based upon facts at variance with such recitals.

[5] We shall now pass to a consideration of questions pertaining to the legal status of North Pleasanton as a municipal corporation, and of its contractual obligations.

[6,7] Whenever a community is undertaken to be incorporated as a city under the general statutes, without having legal authority to do so, and the proceedings are colorably in compliance with the statutes, and the city as so attempted to be created is organized in substantial compliance with statutory re-

quirements, and proceeds thereafter, without prompt objection being legally interposed by the state, to function as a city and to exercise all the powers, duties, and franchises of such, the said city becomes and is a de facto corporation from the time of its organization until such corporation is legally dissolved, or ceases to operate and exercise the functions of a corporation, and its acts and contracts are binding on the municipality. I Dillon on Mun. Corp. § 67; Comanche County v. Lewis, 133 U. S. 198, 10 S. Ct. 286, 33 L. Ed. 604; Graham v. City of Greenville, 67 Tex. 68, 2 S. W. 742; City of El Paso v. Ruckman, 92 Tex. 86, 46 S. W. 25; Brennan v. Weatherford, 53 Tex. 339, 37 Am. Rep. 758; City of Tyler v. Loan Ass'n, 98 Tex. 75, 81 S. W. 2.

[8, 9] The city of North Pleasanton was a de facto corporation, and the federal constitutional restriction against the impairment of the obligations of contracts has application to the valid contracts of that corporation with equal force as to those of a de jure corporation. Const. U. S. art. 1, § 10, cl. 1. The contracts of de facto municipal corporations are accorded the same legal status, by both state and federal courts, as that enjoyed by the contracts of the other class of corporations. Both classes of contracts, in the present state of the statutory law, create property rights and support binding legal obligations. Not only are the contracts of the de facto corporation valid during the existence of the corporation, but they retain their validity after the corporation has been dissolved. Shapleigh v. San Angelo, 167 U. S. p. 646, 17 S. Ct. 957, 42 L. Ed. 310.

[10] In cases of de jure corporations the state cannot, by dissolving the corporation, destroy all existing legal remedies for the enforcement of the contracts of the corporation unless other remedies are made available. Whenever such a corporation is dissolved by the Legislature, without adequate provision being made for the protection and enforcement of the corporate contracts, the pre-existing remedies and powers necessary for the protection and enforcement of the contracts remain in full force and effect. Von Hoffman v. City of Quincy, 4 Wall. 554, 18 L. Ed. 403; Mobile v. Watson, 116 U. S. 305, 6 S. Ct. 398, 29 L. Ed. 620; Morris v. State, 62 Tex. 743.

[11] Keeping in view the legal status which de facto corporations, and their corporate acts, have come to occupy in state and federal jurisprudence, no valid reason can be discerned for denying to contracts of this class of corporations the character of inviolability that pertains to contracts of the other class. The same considerations which infuse virtue into the corporate acts of these corporations, and which justify the exercise by them of the taxing power and other governmental functions which appertain to de jure corporations, require that, so far as may be necessary for the protection of corporate contracts, all those powers, including that of taxation, which were assumed and held by the de facto corporation, shall survive the dissolution of the corporation, unless adequate protection for such contracts be otherwise secured by law.

[12] The provisions of the state Constitution and of statutes passed pursuant thereto, conferring jurisdiction in quo warranto proceedings upon the district court, will not be interpreted as embracing power to impair the obligations of valid contracts. Such an interpretation would render those provisions obnoxious to the clause of the federal Constitution inhibiting the passage of laws having that effect. Mt. Pleasant v. Beckwith, 100 U. S. 534, 25 L. Ed. 699; Cooley Const. Lim. (4th Ed.) 241; Angell & Ames on Corp. (9th Ed.) secs. 332, 333.

[13] At the time the quo warranto judgment was entered against the City of North Pleasanton and its officers, the Legislature had made no provision for the payment of the existing indebtedness of a dissolved de facto corporation. The legal effect of the quo warranto judgment, therefore, was to destroy the corporate existence of the city, and thereby strip its officers of all powers held by them under the corporation, except such of those powers as are necessary for the protection and enforcement of the rights of the creditors of the corporation.

[14] No other remedies having come into existence subsequent to the dissolution, these residuary powers, at the time of trial of the present case, remained unimpaired in the officers who held them when the corporation was dissolved, and such officers, as trustees for the purpose, were required to exercise such powers for the use and benefit of the creditors of the defunct corporation, in the same mode and with the same effect as if the corporation still subsisted.

Since the trial of this case in the court below, however, a statute has become effective whereby provision is made for the deposit and execution of said residuary powers. This statute constitutes article 1262 of the Revised Civil Statutes of 1925, and reads as follows:

"When any corporation is abolished, or if any de facto corporation has been or shall be declared void by any court of competent jurisdiction, or if the same shall cease to operate and exercise the functions of such corporation or de facto corporation, when such corporation or de facto corporation has indebtedness outstanding, then the officers of such corporation, in office at the time of such dissolution, or at the time such corporation ceases to operate and exercise the functions of such corporation, shall take charge of the property of the corporation and sell and dispose of same, and shall settle the debts due by the corporation, and for said purpose shall have power to levy and collect a tax from the inhabitants of said city, town or village in the same manner as the said corpora-

tion. In the event of their failure or refusal to do so, and upon the petition of any number of the citizen taxpayers of such corporation or of the holders of the evidences of indebtedness of such corporation or de facto corporation, to the proper court within this state having jurisdiction in the county in which such dissolved or de facto corporation shall have been situated, the judge of said court shall appoint three trustees to take charge of such property and dispose of same and settle the debts of such corporation or de facto corporation, and for said purpose the said trustees so appointed shall be vested with all the powers herein given to the officers of such corporation."

The provisions of this statute have received our careful consideration and are found to be valid. They should be observed by the trial court in future proceedings in the premises.

We recommend that the judgment of the Court of Civil Appeals herein, reversing the judgment of the trial court and remanding the cause, be affirmed, with instructions from the Supreme Court to the trial court to enter judgment in favor of the plaintiff bank, establishing the warrants sued on as valid claims against said defunct corporation, and to make and enter such other and further orders, judgments, and decrees in the premises as may be appropriate and in keeping with this opinion.

· CURETON, C. J. Judgment of the Court of Civil Appeals, reversing the case, affirmed, with instructions to the District Court, as recommended by the Commission of Appeals.