NESBITT, Judge.
The present controversy had its genesis in 1976 when a warehouse, leased to Eagle Family Discount Stores (Eagle) by Dade County, was destroyed by fire. Dade County’s liability carrier, United States Liability Insurance Company (USLIC), sought to avoid its responsibility under its policy by a declaratory judgment action in the United States District Court, Southern District of Florida alleging that Dade County, as owner, had: (1) not properly maintained an automatic sprinkling system; and (2) knew or should have known of an allegedly improper method of storage in the warehouse that materially increased the risk. The federal court entered summary judgment in favor of Dade County, which determined that USLIC was liable under its policy. USLIC then made payment on the claim to Dade County. Upon making payment, USLIC became subrogated to Dade County’s rights either pursuant to the terms of the insurance policy or, at the very least, by operation of law. Goodwin v. Schmidt, 149 Fla. 85, 5 So.2d 64 (1941); Boley v. Daniel, 72 Fla. 121, 72 So. 644 (1916).
USLIC then instituted the present action in the Eleventh Judicial Circuit against Eagle alleging that it was negligent in the improper storage of flammable materials in the warehouse leased from Dade County. The suit was brought in the name of Dade County, as subrogor, as an exception to the real party in interest rule. Fla.R.Civ.Pro. 1.210(a); Gould v. Weibel, 62 So.2d 47 (Fla.1952); Section 4-3, Trawick’s Florida Practice and Procedure (1980 Edition).[1] Eagle, which was then defended by its carrier, Employers Insurance of Wausau, filed a general denial and a counterclaim alleging that Dade County was negligent in the operation of a water supply system and/or a fire prevention system. The counterclaim was permissive in the sense that it constituted what was, under former common law practice, a setoff. Metropolitan Casualty Ins. Co. of New York v. Walker, 151 Fla. 314, 9 So.2d 361 (1942). Eagle procured an order striking the subrogor’s (in reality USLIC as subrogee for the real party in interest) complaint as a sham showing that in the prior declaratory judgment action Dade County had taken an inconsistent position. We affirmed the order striking the complaint on the grounds of equitable es-toppel. Board of County Commissioners of Dade County v. Eagle Family Discount Stores, Inc., 380 So.2d 486 (Fla. 3d DCA 1980). The parties then proceeded to litigation the counterclaim on the question as to whether notice was required to be given to Dade County pursuant to Section 768.28(6), Florida Statutes (1975).[2] Ultimately, Eagle’s permissive counterclaim was dismissed by the trial court which is the subject of this appeal.
Eagle’s primary contention on appeal is that Sections 768.28(6) and 768.14,[3] Florida *560 Statutes (1975), when construed together, obviate the requirement of notice to the county as a political subdivision. We find it unnecessary to reach the point because we find that the trial court correctly dismissed Eagle’s permissive counterclaim on another ground.
USLIC contends that subrogation, being equitable in nature, 12 Florida Jurisprudence 2d Contribution, Indemnity and Sub-rogation Section 19, the liability of the sub-rogee will not extend beyond the benefits of its subrogation rights. Consequently, when Dade County’s, or in fact, USLIC’s, the real, party in interest, subrogee’s rights against Eagle failed, it could have no further liability. Where a subrogee succeeds to the benefits or the rights of its subrogor, it is chargeable with the liabilities of its subrogor to the extent of all benefits recovered. Occidental Ins. Co. v. Herman, 179 Misc. 499, 38 N.Y.S.2d 278 (Spec.Term.Sup.Ct.1942). Where a subrogee fails to recover any benefits, it is inequitable to extend the subrogor’s liability upon it for to do so would enlarge upon the terms of its policy. Occidental Ins. Co. v. Herman, supra; Marley v. United States, 423 F.2d 324 (Ct.Cl.1970); Restatement of Judgments, § 57, Comment (a). In that regard, we entirely agree with the reasoning of Occidental Ins. Co. v. Herman, supra:
If on the other hand the plaintiff fails to recover and the defendant succeeds upon his counterclaim, then there would be no benefits to which the plaintiff succeeded by reason of the assignment which can be chargeable with the liabilities of the plaintiff’s assignor. To permit the counterclaim, notwithstanding that the plaintiff receives no benefit from the assignment, would be to enlarge the coverage of the policy issued by the plaintiff so as to make it liable, not alone for the damages suffered by its assured, irrespective of fault, but for the liability incurred by him for the damages sustained by the defendant.
38 N.Y.S.2d at 280.
While the trial court did not have the benefit of the subrogee’s argument, it nonetheless reached the right conclusion in dismissing Eagle’s permissive counterclaim for failure to state a cause of action. We will affirm an order or judgment of a trial court if it is supportable on any basis. City of Coral Gables v. Puiggros, 376 So.2d 281 (Fla. 3d DCA 1979).
Affirmed.

. For an excellent discussion regarding the normal ways in which a subrogee institutes an action, see Holyoke Mutual Insurance Company in Salem v. Concrete Equipment, Inc., 394 So.2d 193 (Fla. 3d DCA 1981).

. This section concerns the waiver of sovereign immunity in tort actions; recovery limits; limitation on attorney fees; statute of limitation; and exclusions.

. 768.14 SUIT BY STATE; WAIVER OF SOVEREIGN IMMUNITY. — Suit by the state or any of its agencies or subdivisions to recover damages in tort shall constitute a waiver of sovereign immunity from liability and suit for damages in tort to the extent of permitting the defendant to counterclaim for damages resulting from the same transaction or occurrence.